# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 48900

MITCHELL SMITH, an individual,

    Plaintiff-Appellant,

v.

EXCEL FABRICATION, LLC,
an Idaho limited liability company,

    Defendant-Respondent.

)
)
)
)
)
)
)
)
)
)
)

Boise, June 2022 Term

Opinion Filed: September 15, 2023

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the Fifth Judicial District for the State of Idaho, Twin Falls County. Benjamin J. Cluff, District Judge.

The decision of the district court is <u>reversed</u>, and the case is <u>remanded</u>.

Hepworth Holzer, LLP, Boise, for Appellant, Mitchell Smith. John W. Kluksdal argued.

Hawley Troxell Ennis & Hawley, LLP, Pocatello, for Respondent, Excel Fabrication. John A. Bailey, Jr., argued.

---

STEGNER, Justice.

This case involves the scope of the exclusive remedy rule and the countervailing third-party liability as set forth in the Idaho Worker's Compensation Law. Mitchell Smith was employed by Amalgamated Sugar Company ("Amalgamated") in Nampa, Idaho, when he was injured falling from a flight of stairs after the handrail gave out. Amalgamated had contracted with Excel Fabrication, LLC ("Excel"), to construct and install the flight of stairs and the handrail. Smith received worker's compensation benefits from Amalgamated.[1] Smith then sued Excel as a third-party tortfeasor, alleging that Excel had been negligent in its construction and installation of the staircase.

Excel moved for summary judgment, arguing that it was a "statutory co-employee" with Smith and, therefore, it was immune from liability as a result of the exclusive remedy rule. The

---

[1] Amalgamated's insurance carrier, Intermountain Claims, paid Smith's worker's compensation benefits. For the sake of simplicity, this opinion will refer to Amalgamated as the payer of Smith's benefits.

district court agreed and granted Excel's motion for summary judgment. The district court then dismissed the case, with prejudice. Smith timely appealed. For the reasons discussed below, we reverse the district court's decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2017, Smith was employed by Amalgamated in Nampa, Idaho, as a pipefitter's assistant laborer. Amalgamated entered into a contract with Excel to fabricate "steel mezzanines (including handrails)" as part of Amalgamated's installation of new tanks. The contract designated Excel as an independent contractor. Excel performed the work necessary to fabricate the steel mezzanines at its facility in Twin Falls, Idaho. In May 2017, while work on the project's installation was still ongoing in Nampa, Smith fell a substantial distance when the handrail fabricated by Excel gave out, causing him to injure his shoulder. As a result of his injury, Smith received worker's compensation benefits from Amalgamated.

In May 2019, Smith filed a complaint against Excel in district court, alleging that Excel had been negligent in its welding of the handrail to the stairs. Smith contended in his complaint that the handrail "was only attached by a single spot weld," causing it to fail when Smith attempted to use it. Excel answered, asserting several affirmative defenses, including that Smith's claims were barred by Idaho's worker's compensation statutes.

Excel later moved for summary judgment, relying primarily on *Richardson v. Z & H Construction, LLC*, 167 Idaho 345, 470 P.3d 1154 (2020). Excel argued that the exclusive remedy rule shielded it from liability because Excel is a "statutory co-employee" of Smith pursuant to Idaho Code section 72-209(3). Smith opposed Excel's motion, arguing that under the statutory employer analysis from *Robison v. Bateman Hall, Inc.*, 139 Idaho 207, 76 P.3d 951 (2003), Amalgamated was not a statutory employer of Excel. As a result, Smith concluded that Excel was not immune from tort liability as a statutory co-employee of Smith.

In ruling on Excel's motion for summary judgment, the district court first concluded that Amalgamated was a statutory employer of Excel because it contracted for services with Excel. Next, the district court concluded that Amalgamated was a common employer of both Smith and Excel, such that Excel was shielded from tort liability by Idaho Code section 72-209(3). As a result of its decision, the district court granted Excel's motion and entered a judgment dismissing Smith's complaint with prejudice. Smith moved the district court to reconsider its decision, but the district court ultimately denied his request. Smith timely appealed.

## II. STANDARD OF REVIEW

On appeal from an order of summary judgment, this Court exercises *de novo* review and utilizes the same standard of review used by the lower court in ruling on a motion for summary judgment. *Manning v. Micron Tech., Inc.*, 170 Idaho 8, 12, 506 P.3d 244, 248 (2022). A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "All disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party." *Manning*, 170 Idaho at 12, 506 P.3d at 248 (internal citation omitted). If no disputed issues of material fact exist, then there only remains a pure question of law. *Id.* This Court exercises free review of questions of law. *Id.* Statutory interpretation is also a question of law over which we exercise free review. *Estate of Stahl v. Idaho State Tax Comm'n*, 162 Idaho 558, 562, 401 P.3d 136, 140 (2017).

## III. ANALYSIS

### A. The district court erred in granting summary judgment to Excel.

In ruling on Excel's motion for summary judgment, the district court first concluded that Amalgamated was Excel's category one statutory employer because Amalgamated had hired Excel to perform services. Next, the district court concluded that Amalgamated was both Smith and Excel's "common employer." Additionally, because Idaho Code section 72-209(3) exempts an employer's *employees* from liability, and Excel was an "employee" of Amalgamated, the district court relied on *Richardson* to conclude that Excel was shielded from third-party tort liability. 167 Idaho 345, 470 P.3d 1154 (2020). Specifically, the district court stated: "For better or for worse, the Idaho Supreme Court recently ruled that contracted business entities, such as limited liability companies, qualify as employees under the statutory definition of 'employee' for purposes of worker's compensation immunity." As a result of its analysis, the district court granted Excel's motion for summary judgment.

On appeal, Smith argues that the district court erred in concluding that Amalgamated was Excel's statutory employer. Relying chiefly on this Court's statutory employer analysis in *Robison*, Smith argues that Amalgamated is neither Excel's "category one" nor its "category two" employer. Smith reasons that Amalgamated is not a category one statutory employer of Excel because Amalgamated is not a contractor or subcontractor. Smith contends that "a contractual relationship is only sufficient to create a statutory employer relationship in the context of subcontractors and

3

contractors." Smith also argues that Amalgamated is not a category two statutory employer of Excel because Amalgamated's contract with Excel did not cover services that could have been performed by direct employees of Amalgamated in their sugar producing business. As a result, Smith contends that the district court erred in determining that Excel was Smith's statutory co-employee and exempting it from third-party liability.

In response, Excel contends that the district court correctly concluded that Excel was Smith's statutory co-employee, allowing it to "stand in the shoes of the parties' common upstream employer, Amalgamated," and exempting it from liability pursuant to the exclusive remedy rule. Excel first asserts that the plain language of Idaho Code section 72-209(3) extends immunity from a civil suit to an employer's employees "working under the umbrella of a common upstream statutory employer." Excel relies primarily on *Richardson* for the propositions that (1) entities working under a statutory employer meet the definition of "employee" in Idaho Code section 72-102(11), and (2) "co-employees both working under a common upstream employer are entitled to immunity." 167 Idaho 345, 470 P.3d 1154 (2020).

This case provides us with the opportunity to explain the areas of statutory employer immunity and third-party tort liability. For the reasons that will be discussed, we now hold that "independent contractors" are separate and distinct from "contractors and subcontractors," as those terms are set out in Idaho Code section 72-223(1). As a result, independent contractors are not afforded immunity from tort liability in the way that contractors and subcontractors are as statutory employers under the statute. Under this framework, Excel is not entitled to immunity from tort liability as a statutory employer or statutory co-employee of Smith. We also take this opportunity to overrule *Robison*, which strayed from the plain language of Idaho Code section 72-223 and unnecessarily muddled the analysis regarding third-party tort liability for "owners or lessee[s] of premises[.]" *Robison*, 139 Idaho at 216, 76 P.3d at 960 (Kidwell, J., dissenting) (first alteration in original) (internal quotation marks omitted).

The Idaho Worker's Compensation Law is set forth in Title 72 of the Idaho Code. *See generally* I.C §§ 72-102 through 72-1717. Idaho Code sections 72-209(1) and 72-211 comprise what is colloquially referred to as the "exclusive remedy rule," which limits an injured worker's remedy to worker's compensation benefits when the worker sustains an injury that arises out of and is in the course of employment. The rule prohibits an injured worker from bringing a civil action for tort damages against his employer, whether that employer is his direct employer or his

statutory employer. *Id.* This statutory scheme has historically been called the "grand bargain" due to the compromise each party (employer and employee) makes by engaging in the employment relationship. Taylor L. Mossman-Fletcher, *Workers' Compensation Trends Challenge the Original Grand Bargain*, THE ADVOCATE 40 (May 2022).

Title 72, however, does not prevent an injured worker from recovering damages from third parties, with two notable exceptions:

> The right to compensation under this law shall not be affected by the fact that the injury, occupational disease or death is caused under circumstances creating in some person other than the employer a legal liability to pay damages therefor, such person so liable being referred to as the third party. Such third party *shall not include* [1] those employers described in section 72-216, Idaho Code, having under them contractors or subcontractors who have in fact complied with the provisions of section 72-301, Idaho Code; nor include [2] the owner or lessee of premises, or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor or for any other reason, is not the direct employer of the workmen there employed.

I.C. § 72-223(1) (italics added). This Court has defined the two excepted classes of employers as category one and category two statutory employers. *Kelly v. TRC Fabrication, LLC*, 168 Idaho 788, 792, 487 P.3d 723, 727 (2021).

> In turn, Idaho Code section 72-102 defines "employer" as

> any person who has expressly or impliedly hired or contracted the services of another. It includes *contractors and subcontractors*. It includes the owner or lessee of premises, or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor or for any other reason, is not the direct employer of the workers there employed.

I.C. § 72-102(12)(a) (italics added).

Next, "independent contractor" is defined in a different subsection of Idaho Code section 72-102 as "any person who renders service for a specified recompense for a specified result, under the right to control or actual control of his principal as to the result of his work only and not as to the means by which such result is accomplished." I.C. § 72-102(16).

> Finally, "employee" is defined as follows:

> "Employee" is synonymous with "workman" and means any person who has entered into the employment of, or who works under contract of service or apprenticeship with, an employer. It does not include any person engaged in any of the excepted employments enumerated in section 72-212, Idaho Code, unless an election as provided in section 72-213, Idaho Code, has been filed.

5

I.C. § 72-102(11).

We begin by noting that the distinction between "independent contractors" and "contractors and subcontractors" has been either historically overlooked by this Court, or, when noted, the distinction has been viewed as nonexistent. The case before us today presents a unique factual scenario requiring us to revisit our prior jurisprudence on this point. Historically, this Court has sometimes concluded that independent contractors are equivalent to contractors and subcontractors in the context of immunity afforded a statutory employer. *See*, *e.g.*, *Kolar v. Cassia County*, 142 Idaho 346, 352, 127 P.3d 962, 968 (2005); *Gonzalez v. Lamb Weston, Inc.*, 142 Idaho 120, 122 n.2, 124 P.3d 996, 998 n.2 (2005). The original case cited for this principle is *Spencer v. Allpress Logging, Inc.*, 134 Idaho 856, 860–61, 11 P.3d 475, 479–80 (2000).[2] However, a close reading of *Spencer* does not support the conclusion that there is no substantive distinction between contractors, subcontractors and independent contractors. In fact, the words "independent contractor" do not appear in the *Spencer* opinion at all. Consequently, *Spencer* does not support the proposition that there is no distinction between an "independent contractor" and a "contractor or subcontractor[.]" The facts of *Spencer* bear explanation to illustrate the importance of recognizing the legislature's use of the phrase "contractors and subcontractors" as distinct from "independent contractors."

In *Spencer*, Schilling, the owner of several hundred acres of property, contracted with two buyers to purchase the timber from his property. *Id.* at 857, 11 P.3d at 476. The first buyer, Weyerhaeuser, agreed to purchase the Ponderosa pine timber while the second buyer, Columbia Vista, agreed to purchase the Douglas fir timber. *Id.* Under both purchase agreements, Schilling was responsible for harvesting the timber and delivering it to the respective mills. *Id.* Schilling then contracted with Allpress Logging to cut and deliver the timber to Weyerhaeuser and Columbia Vista. *Id.* at 858, 11 P.3d at 477. Almost a year into the logging operation, Spencer, an employee of Allpress, was severely injured by a piece of logging equipment that fell on top of him. *Id.* At the time Spencer's injury occurred, neither Schilling nor Allpress carried worker's compensation insurance. *Id.*

---

[2] Another case commonly cited to support this principle is *Findley v. Flanigan*, 84 Idaho 473, 373 P.2d 551 (1962). This case is ultimately not binding precedent on this Court because it was decided long before Idaho enacted its current Worker's Compensation Law. *See* 1971 Idaho Sess. Laws ch. 124, § 3. In *Findley*, this Court described an independent contractor's relationship with the statutory employer, but the case turned on whether proper notice of the claim had been given to the statutory employer. *Id.* at 478, 373 P.2d at 554. Consequently, even if it were binding, *Findley* is inapposite to this case.

6

Spencer filed a worker's compensation complaint against Schilling, Weyerhaeuser, and Allpress. *Id.* The Idaho Industrial Commission concluded that Allpress and Schilling were liable for Spencer's worker's compensation benefits, but that Weyerhaeuser was not liable as a statutory employer. *Id.* at 859, 11 P.3d at 478. On appeal, this Court reversed the decision of the Industrial Commission. *Id.* at 860–61, 11 P.3d at 479–80. This Court instead concluded that Weyerhaeuser was liable for Spencer's worker's compensation benefits as his statutory employer because it had contracted with Schilling to purchase the timber, who in turn contracted with Allpress (which failed to comply with the requirement to carry worker's compensation insurance) to harvest and deliver the timber. *Id.*; *see also* I.C. § 72-216. The case contains no reference to independent contractors and instead simply refers to the various entities as contractors and subcontractors.

Five years after *Spencer*, this Court cited that case for the following principle: "When determining who is a statutory employer, we have construed 'contractor' and 'subcontractor' as meaning an independent contractor." *Gonzalez*, 142 Idaho at 122 n.2, 124 P.3d at 997 n.2; *see also Kolar*, 142 Idaho at 352, 127 P.3d at 968 ("[W]e have categorized independent contractors who employed the injured worker as 'contractors or subcontractors' within the meaning of § 72-223."). Our decision in *Spencer* makes clear that this Court had yet to grapple with the statutory difference between "contractors and subcontractors" and "independent contractors." Rather, it seems that the principle cited in *Gonzalez* and *Kolar* was presumed to have been set forth in *Spencer*. However, upon a careful reading of *Spencer*, the principle attributed to it in *Gonzalez* and *Kolar* does not appear.

At the same time, if read narrowly, the proposition attributed to *Gonzalez* and *Kolar* is correct: An independent contractor *who employs the injured worker* is treated similarly to a contractor or subcontractor for purposes of establishing immunity from third-party liability under Idaho Code section 72-223(1). However, this narrow proposition has no applicability in this case because Excel, the independent contractor, did not employ Smith.

Consequently, this Court's prior joining together of contractors and subcontractors with independent contractors has limited applicability in general and none given the specific facts of this case. The plain text of the relevant statutes supports this view.

> The objective of statutory interpretation is to derive the intent of the legislative body that adopted the act. Statutory interpretation begins with the literal language of the statute. Provisions should not be read in isolation, but must be interpreted in the context of the entire document. The statute should be considered

7

as a whole, and words should be given their plain, usual, and ordinary meanings. It should be noted that the Court must give effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant. When the statutory language is unambiguous, the clearly expressed intent of the legislative body must be given effect, and the Court need not consider rules of statutory construction.

*Estate of Stahl*, 162 Idaho at 562, 401 P.3d at 140 (quoting *State v. Schulz*, 151 Idaho 863, 866, 264 P.3d 970, 973 (2011)). This Court has previously recognized as a rule of statutory construction the Latin maxim, "*expressio unius est exclusio alterius*," which literally means "to express or include one thing implies the exclusion of the other." *Expressio unius est exclusio alterius*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also Saint Alphonsus Reg'l Med. Ctr. v. Gooding County*, 159 Idaho 84, 87, 356 P.3d 377, 380 (2015).

At the outset, we note that the principal statute at issue in this case, section 72-223, specifically mentions "contractors and subcontractors" when describing a category one statutory employer. However, it then specifically mentions "independent contractors" when describing a category two statutory employer. As a result, the legislature clearly meant to draw a distinction between the phrases "contractors and subcontractors" and "independent contractors." In divining what the legislature intended by this distinction, we may look to the rules of statutory construction in addition to the statute's plain text. *Estate of Stahl*, 162 Idaho at 562, 401 P.3d at 140.

First, in the definitional section of the Worker's Compensation Law, the terms "employee," "employer," and "independent contractor" are separately defined. *See* I.C. § 72-102(11), (12)(a), (16). The definition of "employer" expressly "includes contractors and subcontractors," and draws a distinction for "independent contractors" in a subsequent sentence. I.C. § 72-102(12)(a). The Code also has a definition of "independent contractor" which makes no reference to a "contractor" or "subcontractor[.]" I.C. § 72-102(16). Next, section 72-216, entitled "Contractors," expressly references only "contractors and subcontractors" and omits any mention of "independent contractors." I.C § 72-216(1). In section 72-223, which defines category one and category two statutory employers, category one employers are defined as "those employers described in section 72-216, Idaho Code, having under them *contractors or subcontractors* who have in fact complied with the provisions of section 72-301, Idaho Code." I.C § 72-223(1) (italics added). Category two employers, on the other hand, are defined as "the owner or lessee of premises, or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an *independent contractor* or for any other reason, is not the direct employer of the workmen there employed." *Id.* (italics added).

8

In applying the *expressio unius est exclusio alterius* canon of construction to the legislature's use of the phrase "contractors and subcontractors," it is evident that the phrase does not include "independent contractors." This is especially true given the legislature's later mention of independent contractors in another part of section 72-223 and its separate definition of "independent contractors" in section 72-102(16). Had the legislature intended all three types of contractors to mean the same thing, it would not have needed to separately define "independent contractors" in section 72-102(16) or to use the terms differently on the multiple occasions it did.

Our primary objective in engaging in statutory interpretation is to determine the legislature's intent. The language of the statute leads us to the conclusion that the legislature intended that there be a distinction between "contractors and subcontractors" and "independent contractors." Admittedly, this distinction has, until today, not been fully recognized by this Court. Our decision acknowledges the significant statutory difference in these terms as created, defined, and used by the legislature. The language of the statute indicates that independent contractors who cause injury to workers who are not employed by them are not immune from third-party tort liability. In this case, it is apparent that Excel was hired by Amalgamated as an independent contractor. In fact, the contract signed by the parties specifically designates Excel as such.

> 17. Independent Contractor. Contractor [Excel] is, and shall act as, an independent contractor (and not as the agent or representative of Owner [Amalgamated]). Subject to compliance with the requirements of this Agreement, Contractor [Excel] shall perform the Work in accordance with its own methods and be fully responsible for the acts, omissions, conduct and performance of its employees, subcontractors or independent contractors.

(As an aside, this contractual provision strongly suggests that Excel has waived any right it might have enjoyed to tort immunity afforded to it under Idaho's worker's compensation laws. At a minimum, it clarifies Excel's status as that of an independent contractor.) Given the statutory scheme prescribed by the legislature, and Excel's explicit status as an independent contractor, Excel is not a statutory employer of Smith. As a result, Excel is not entitled to third-party tort immunity for Smith's injury.

We also recognize the policy considerations and practical concerns that may arise as a result of rejecting Excel's claim of statutory third-party tort immunity. One is the notion that allowing injured workers to sue an independent contractor will allow the worker to receive a double recovery. (Here, for example, Smith has already received worker's compensation benefits from Amalgamated.) However, the legislature anticipated and recognized this concern because

subsection (3) of section 72-223 prevents such a double recovery. That section of the Code reads: "If compensation has been claimed and awarded, the employer having paid such compensation or having become liable therefor, *shall be subrogated to the rights of the employee*, *to recover against such third party to the extent of the employer's compensation liability*." I.C. § 72-223(3) (italics added). To continue with the example in this case, were Smith to prove that Excel was negligent in its construction of the handrail and recover damages for Excel's negligence, Amalgamated (or, more precisely, its surety) would be statutorily entitled to recover the amount it paid to Smith in worker's compensation benefits. (To the extent a jury were to award more than Amalgamated paid in benefits, Smith would be entitled to any excess recovery.)

To apply this principle, it is important to first understand the relationship between each party. It is undisputed that Smith is an employee of Amalgamated. It is also undisputed that Smith received worker's compensation benefits from Amalgamated. Furthermore, under the framework announced today, the relationship between Amalgamated and Excel is one of employer and independent contractor. As such, Amalgamated was not Excel's statutory employer. *See Shriner v. Rausch*, 141 Idaho 228, 108 P.3d 375 (2005) (concluding that a sole proprietor independent contractor was not eligible for worker's compensation benefits from the entity that contracted him). The more difficult relationship to define is the one between Excel as an independent contractor and Smith as an employee of Amalgamated. To determine the nature of this relationship, Smith relies on *Robison*, 139 Idaho 207, 76 P.3d 952, while Excel relies on *Richardson*, 167 Idaho 345, 470 P.3d 1154. Each case warrants discussion.

In *Robison*, Fred Meyer, a grocery store operator, owned a building site and hired Bateman-Hall, Inc., to construct a building on the site. 139 Idaho at 208, 76 P.3d at 952. Bateman-Hall then hired Robison Roofing to perform the roofing work on the project. *Id.* Robison, an employee of Robison Roofing, was injured when he hit his head on a sprinkler causing him to fall more than fourteen feet onto a concrete floor. *Id.* at 208–09, 76 P.3d at 952–53. Robison received worker's compensation benefits from Robison Roofing, his direct employer. *Id.* at 209, 76 P.3d at 953.

Robison then brought a third-party negligence action against Fred Meyer, Bateman-Hall, and Shilo Automatic Sprinklers. *Id.* The trial court granted summary judgment in favor of Fred Meyer and Bateman-Hall, concluding they were immune from third-party tort liability. *Id.* On appeal, this Court conducted an examination of the statutory employer case law and its

applicability. *Id.* at 210, 76 P.3d at 954. First, this Court noted that "a statutory employer is anyone who, by contracting or subcontracting out services, is liable to pay worker's compensation benefits if the direct employer does not pay those benefits." *Id.* at 210–11, 76 P.3d at 954–55. This Court then analyzed each employer entity for its potential third-party tort liability. *Id.* It began with Fred Meyer, ultimately concluding that it was not immune from third-party tort liability:

> "A statutory employer does not include the mere owner of the premises, unless the owner is also the virtual proprietor or operator of the business there carried on." *Harpole v. State*, 131 Idaho at 440, 958 P.2d at 597. To determine who is a virtual proprietor or operator, the Court must consider whether the work being done pertains to the business, trade, or occupation of the owner or proprietor and whether such business, trade, or occupation is being carried on by it for pecuniary gain. *Id.* "Generally, to find a business or person to be a statutory employer, the work being carried out by the independent contractor on the owner or proprietor's premises must have been the type that could have been carried out by employees of the owner or proprietor in the course of its usual trade or business." *Id.* In short, "if a person is normally equipped with manpower and tools to do a job and nevertheless contracts it to another employer, he is the statutory employer of the second employer's employees." *Id.* (quotations omitted.)

> Applying this analysis to Fred Meyer, it is clear Fred Meyer is not a statutory employer; therefore, it is not exempt from liability under I.C. § 72–223. The undisputed facts demonstrate Fred Meyer is in the business of the retail sale of merchandise. As admitted in discovery, Fred Meyer is not in the business of construction or roof installation. Further, Fred Meyer did not employ individuals who were trained in building construction or roof installation, nor did it own materials or equipment necessary to engage in building construction or roof installation.

> In light of these facts, and applying the analysis set forth in *Harpole*, Fred Meyer is not "the owner or lessee of premises, or other person who is virtually the proprietor or operator of the business there carried on" within the meaning of the Act. Therefore, the district judge erred in holding Fred Meyer immune from third-party tort liability.

*Id.* at 212–13, 76 P.3d at 957–58.

This Court next discussed Bateman-Hall's employer status, concluding that it was immune from third-party liability. *Id.* at 214, 76 P.3d at 958. This Court distinguished between a "more limited test" that applied to property owners and a presumably broader test that applied to contractors and subcontractors:

> Applying the more limited test to owners as opposed to subcontractors is supported by the express language and general purpose of the Act. Under the express terms of the statute, an owner (or lessee) is not liable as an employer unless deemed "virtually the proprietor or operator of the business there carried on."

I.C. §§ 72–102(12)(a) and 72–223. In contrast, a contractor or subcontractor is liable based on this contractual status alone. Moreover, the purpose of the Act and the expanded definition of employer, was "designed to prevent an employer from avoiding liability under the worker's compensation statutes by subcontracting work to others who may be irresponsible and not insure their employees." *Runcorn v. Shearer Lumber Products, Inc.*, 107 Idaho at 393, 690 P.2d at 328 (quotations omitted). From a common sense view, a property owner often hires parties who have employees to perform work on the property. Hiring such contractors or subcontractors does not necessarily demonstrate an effort to avoid worker's compensation liability. However, where that owner is engaged in the same type of business as the contractor or subcontractor, it makes more sense to consider the owner's attempt to circumvent worker's compensation liability. For these reasons, it makes sense to have a rule that limits a property owner's liability under the statutory concept of "employer," while interpreting the contractor or subcontractor's liability more broadly. Thus, the district judge correctly determined Bateman-Hall is immune from third-party tort liability pursuant to I.C. § 72–223, as a general contractor.

*Id.* (footnote omitted). This Court's decision in *Robison* allowed the plaintiff to sue Fred Meyer, but exempted Bateman-Hall from third-party liability. *Id.* at 215, 76 P.3d at 959.

Next, in *Richardson*, this Court addressed "statutory co-employee immunity." 167 Idaho at 347, 470 P.3d at 1156. There, Hayden Homes, a general contractor, contracted with several subcontractors to build a residence: Hayden hired Z & H Construction, LLC, for framing work; Plumbing Unlimited, LLC, for plumbing work; and Alignment Construction, LLC, for finish carpentry. *Id.* at 348, 470 P.3d at 1157. Z & H then sub-subcontracted with Hernandez Framing, LLC, to complete the framing work. *Id.* The plaintiff, Richardson, was working for Alignment when he fell through a crawlspace cover that had collapsed under him. *Id.* Richardson received worker's compensation benefits from Alignment for his injuries. *Id.* Richardson then brought a negligence action against Z & H, Plumbing Unlimited, and Hernandez (the Respondent LLCs). *Id.* Z & H and Hernandez moved for summary judgment, which the district court granted, concluding that the Respondent LLCs were statutory co-employees, therefore exempting them from third-party tort liability. *Id.* at 349, 470 P.3d at 1158.

On appeal, this Court engaged in the statutory employer analysis, noting that "[i]dentifying statutory employers under section 72-223(1) is the starting point. But the full scope of immunity available under the Worker's Compensation Law is not analyzed unless [section] 72-209(3) is also considered." *Id.* at 350, 470 P.3d at 1159. Section 72-209(3) provides, in part, that "[t]he exemption from liability given an employer by this section shall also extend to the employer's surety and to all officers, agents, servants *and employees* of the employer or surety." I.C. § 72-209(3) (italics

12

added). After identifying the appropriate statutes to consider, this Court then discussed whether the Respondent LLCs were Richardson's statutory co-employees. *Richardson*, 167 Idaho at 350, 470 P.3d at 1159. The Court summarized Richardson's employment relationship to the various entities:

> Here, Richardson has two employers for the purposes of the Worker's Compensation Law. First, Alignment is Richardson's direct employer. Second, it is undisputed that Hayden is Richardson's statutory employer because Hayden subcontracted Alignment for finishing work and would be liable to pay worker's compensation benefits to Alignment's employees if Alignment had failed to meet its worker's compensation obligation. Under this Court's precedent, Hayden is Richardson's category one statutory employer.

*Id.* at 351, 470 P.3d at 1160.

Next, the Court turned to Hayden's relationship with the Respondent LLCs, concluding that Hayden was also the statutory employer of the Respondent LLCs. *Id.* This Court determined that the Respondent LLCs were statutory employees of Hayden because "employees" as defined in section 72-209(3) encompassed LLCs and other business entities (as opposed to only natural persons). *Id.* at 352, 470 P.3d at 1161. Consequently, the Court concluded that the Respondent LLCs were immune from third-party liability. *Id.* at 353, 470 P.3d at 1162.

Despite Smith's reliance on *Robison*, we conclude that, under the framework we have announced today, the application of *Robison* is simply inapplicable here given Excel's status as an independent contractor. Smith had no employment relationship with Excel that would afford Excel immunity in tort. Smith is not a co-employee of the independent contractor. This case is factually distinguishable from *Robison*.

Further, the decision in *Robison* was "manifestly wrong" and "overruling it is necessary to vindicate plain, obvious principles of law and remedy continued injustice." *Greenough v. Farm Bureau Mut. Ins. Co. of Idaho*, 142 Idaho 589, 592, 130 P.3d 1127, 1130 (2006). Smith hinges his argument on *Robison*, but we reject that argument and, therefore, find it necessary to decide this case on a different basis. The dissent in *Robison* more accurately reflects how the worker's compensation law should be interpreted. 139 Idaho at 215, 76 P.3d at 959 (Kidwell, J., dissenting). The plain language of Idaho Code section 72-223(1) suggests that the Idaho legislature intended for certain entities, including owners or lessees of premises, such as Fred Meyer in the *Robison* case, to be immune from third-party tort liability.

Additionally, we also disagree with Excel that *Richardson* controls our analysis. *Richardson* held that *subcontractors* (who were LLCs) were statutory co-employees pursuant to Idaho Code section 72-209(3), thus entitling the Respondent LLCs to immunity from third-party tort liability. The key to our holding in *Richardson* was the nature of the relationship between Hayden and its various *subcontractors*. Specifically, Hayden was the general contractor, and it hired three different *subcontractors* to perform various aspects of the job. The parties were defined as subcontractors as that term is commonly understood in the construction industry and under Idaho's worker's compensation statutes.

Here, in contrast, Excel was an *independent* contractor. Section 72-216 makes clear that an employer's *employees* retain the benefit of immunity from tort liability. Independent contractors are, by definition, not employees. I.C. § 72-102(11), (16); *also compare independent contractor*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("Someone who is entrusted to undertake a specific project but who is left free to do the assigned work and to choose the method for accomplishing it.") *with employee*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("Someone who works in the service of another person (the employer) under an express or implied contract of hire, under which the employer has the right to control the details of work performance."). Excel, an independent contractor, does not enjoy immunity from third-party tort liability as a "co-employee" of Smith.

In summation, we hold the following: First, the text of the Worker's Compensation Law indicates that "independent contractors" are fundamentally different from "contractors and subcontractors" as those terms are used throughout the Idaho Worker's Compensation Act; and second, because of this fundamental difference, an independent contractor is not immune from third-party tort liability as a statutory employer. Rather, by definition, an independent contractor, is separate and distinct from an employer. *Compare* I.C. § 72-102(16), *with* I.C. § 72-102(12)(a). We additionally hold that *Robison* was incorrectly decided and now overrule it. Based on the district court's failure to recognize the differences between an independent contractor, from either a contractor or a subcontractor, we further hold that the district court erred in granting Excel's motion for summary judgment.

## IV. CONCLUSION

For the reasons discussed, the decision of the district court is reversed. Costs are awarded to Smith as the prevailing party. I.A.R. 40. The case is remanded for further proceedings consistent with this decision.

Chief Justice BEVAN and Justice MOELLER CONCUR.

ZAHN, Justice, concurring in the result.

I write separately because, while I agree that the district court erred and its decision should be reversed, I do not agree with the majority's reasoning. The issue raised is whether Excel is an employee of Amalgamated and therefore a "co-employee" of Smith, entitled to immunity from Smith's claims pursuant to Idaho Code section 72-209(3). In analyzing this issue, the majority focuses its analysis on Idaho Code section 72-223. However, section 72-223 is irrelevant to the issue presented. Instead, the analysis begins and ends with the threshold question of whether Excel is Amalgamated's employee or an independent contractor.

Idaho's Worker's Compensation Law ("Act") establishes that Excel is an independent contractor and therefore it cannot be Amalgamated's employee. As a result, it cannot be Smith's co-employee and is not entitled to immunity pursuant to section 72-209(3). The district court erred in concluding otherwise and I would reverse its decision.

**A. As an independent contractor, Excel cannot be Amalgamated's employee.**

Excel claims it is immune from liability pursuant to section 72-209(3). That section extends the Act's "exclusive remedy" immunity from employers to the employers' officers, agents, servants, and employees. Excel can only avail itself of this "co-employee" immunity if it establishes that it is an employee of Amalgamated.

"The underlying principle of Idaho workers' compensation law is the existence of an employer-employee relationship." *Shriner v. Rausch*, 141 Idaho 228, 231, 108 P.3d 375, 378 (2005). "Without that relationship, there is no coverage." *Id.* Put differently, "Idaho law has consistently precluded independent contractors from coverage under worker's compensation." *Daleiden v. Jefferson Cnty. Joint Sch. Dist. No. 251*, 139 Idaho 466, 470, 80 P.3d 1067, 1071 (2003). "Independent contractors are outside of the coverage of the Workmen's Compensation Law while employees are ordinarily within it." *Id.* (quoting *Anderson v. Gailey*, 97 Idaho 813, 820, 555 P.2d 144, 150 (1976)).

While Excel is not seeking unemployment benefits in this case, the above-quoted caselaw applies with equal force here. Under the Act, the legal statuses of employee and independent contractors are mutually exclusive. Employees are covered under the Act and independent

contractors are not. A corollary to be drawn from these cases is that Excel is either an employee or an independent contractor under the Act, but it cannot simultaneously be both.

The analysis of whether Excel is an employee or an independent contractor must begin with the Act's definitions and this Court's decisions analyzing and applying the same. The Act defines an "employee" as

> synonymous with "workman" and means any person who has entered into the employment of, or who works under contract of service or apprenticeship with, an employer.

I.C. § 72-102(11). "Employer," in turn, is defined as

> any person who has expressly or impliedly hired or contracted the services of another. It includes contractors and subcontractors. It includes the owner or lessee of premises, or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor or for any other reason, is not the direct employer of the workers there employed.

I.C. § 72-102(12)(a). Both definitions reference entering into employment or into contracts for service. While the Act does not separately define what constitutes a contract for service, it does define private and public employment. Those definitions provide insight into the type of contract required to establish an employer-employee relationship under the Act.

By its terms, the Act applies to private and public employment. I.C. § 72-203. It defines both types of employment to include individuals "in the service of an employer under any contract of hire[.]" I.C. § 72-204(2). We have held that the term "contract of hire" "denotes an employer/employee relationship, and not simply a contractual hiring arrangement." *Daleiden*, 139 Idaho at 470, 80 P.3d at 1071. The Act's definitions of "employee," "employer," and private employment are all applicable to whether a person is an employee or an independent contractor. We therefore infer that they are governed by one spirit and policy and were intended to be consistent and harmonious with each other. *See Saint Alphonsus Reg'l Med. Ctr. v. Elmore County*, 158 Idaho 648, 653, 350 P.3d 1025, 1030 (2015). Applying a consistent and harmonious construction of these definitions, one seeking to prove they are an employee under the Act must establish more than just the existence of a contract; instead they must prove the contract evidences an employer/employee relationship.

In contrast to an employee, the Act defines an "independent contractor" as

16

> any person who renders service for a specified recompense for a specified result, under the right to control or actual control of his principal as to the result of his work only and not as to the means by which such result is accomplished.

I.C. § 72-102(16). Notably absent from this definition is any mention of a "contract for hire" or contract for services. Instead, the definition focuses on the rendition of services for a specified result and that the principal may not control the means or method by which the result is accomplished.

In the worker's compensation context, we have consistently applied a four-part test to determine whether a contract includes the "right to control" that differentiates an employee from an independent contractor:

> Whether a claimant is an employee or an independent contractor is a factual determination. . . .

> The test in determining whether a worker is an independent contractor or an employee is whether the contract gives, or the employer assumes, the right to control the time, manner and method of executing the work, as distinguished from the right merely to require certain definite results.

> Four factors are used to determine whether a right to control exists: 1) direct evidence of the right, 2) method of payment, 3) furnishing major items of equipment, and 4) the right to terminate the relationship at will. When applying the right to control test the [Court] must balance each of the elements present to determine their relative weight and importance, since none of the elements in itself is controlling.

> When doubt exists as to whether an individual is an employee or an independent contractor. . . , the [A]ct must be given a liberal construction . . . in favor of finding the relationship of employer and employee.

*Kiele v. Steve Henderson Logging*, 127 Idaho 681, 683, 905 P.2d 82, 84 (1995) (citations omitted).

The four-factor test governs the determination of whether Excel is Amalgamated's employee or an independent contractor. While a contract for services may be the starting point for an analysis of whether Excel is an employee or an independent contractor, "employee" status requires that Amalgamated have the right to control the time, manner and method of how Excel does the job. If that right to control is absent, and instead Amalgamated merely has the right to require that Excel achieve certain results, then Excel is an independent contractor. It is either one or the other. Excel cannot simultaneously be both an employee and an independent contractor under the four-factor test.

The district court determined Excel was an employee and granted summary judgment in its favor on that basis. We review the district court's order granting summary judgment utilizing

the same standard that the trial court applied when deciding to grant the motion. *Summerfield v. St. Luke's McCall, Ltd.*, 169 Idaho 221, 228, 494 P.3d 769, 776 (2021).

> Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." . . . "This Court liberally construes the record in favor of the party opposing the motion for summary judgment and draws any reasonable inferences and conclusions in that party's favor."

*Id.* (citations omitted).

The district court's decision was erroneous because the evidence establishes that there is no genuine dispute of material fact that Excel's contract with Amalgamated lacked the requisite "right to control" required for an employee-employer relationship. In support of its motion for summary judgment, Excel submitted its contract with Amalgamated. The contractual provisions establish that all four elements of the right to control test weigh in favor of finding that Excel was an independent contractor.

On the first element, direct evidence of the right to control, the contract expressly states in paragraph 17 that Excel is an independent contractor of Amalgamated and that it shall perform the work "in accordance with its own methods." On the second element, method of payment, paragraphs 2 and 3 of the contract indicate that Excel was paid a "contract price," rather than an hourly rate. This is indicative of an independent contractor relationship. *See Shriner*, 141 Idaho at 232, 108 P.3d at 379. On the third element, furnishing major items of equipment, paragraph 6 of the contract provides that Excel would "provide all labor, materials, equipment, tools, vehicles, supervision and resources necessary to complete the work." This is indicative of an independent contractor relationship. *Id.* On the fourth element, right to terminate the relationship at will, paragraph 16 of the contract provides that, upon written notice, Amalgamated may terminate the contract at its convenience at any time; and that, upon termination, Excel is entitled to payment for any portion of the work satisfactorily performed prior to termination. While the contract gives Amalgamated the right to terminate the agreement at will, the contract provides it is liable for work performed up to that date. As a result, this is indicative of an independent contractor relationship. *Id.* All four factors weigh in favor of finding that Excel was an independent contractor of Amalgamated.

While this should be the beginning and the end of the inquiry in this case, it is not because the district court believed its conclusion was compelled by this Court's decision in *Richardson v. Z & H Construction, LLC*, 167 Idaho 345, 470 P.3d 1154 (2020). In *Richardson*, we held that,

18

because a general contractor entered into contracts with its subcontractors, it was the statutory employer of the subcontractors. *Id.* at 352–53, 470 P.3d at 1161–62. Idaho's worker's compensation law does not sweep so broadly. For the reasons discussed below, I believe that *Richardson* is manifestly wrong and should be overruled.

   **B.** ***Richardson*** **is manifestly wrong because it failed to apply the four-part right to control test to determine whether the LLCs were employees or independent contractors.**

The plaintiff in *Richardson* was injured while working on the construction of a home. *Id.* at 348, 470 P.3d at 1157. The general contractor on the project was Hayden Homes. *Id.* Hayden hired various subcontractors to perform work on the project. *Id.* It contracted with Z & H Construction, LLC, for the framing work. *Id.* Z & H then contracted with Hernandez Framing, LLC, to complete the framing work. *Id.* Hayden contracted with Plumbing Unlimited, LLC, for the plumbing work. *Id.* Hayden also contracted with Alignment Construction, LLC, for the finish carpentry work. *Id.* Alignment was Richardson's employer. *Id.* at 347, 470 P.3d at 1156. The following illustration demonstrates the parties' relationships:



Richardson was injured on the job when he walked over a crawl space cover inside the home, which collapsed underneath him and caused him to fall into the crawl space below. *Id.* at 348, 470 P.3d at 1157. Richardson ultimately required spinal fusion surgery on his neck. *Id.* Richardson received worker's compensation benefits through Alignment's compensation insurer. *Id.*

Richardson later sued Z & H, Hernandez Framing, and Plumbing Unlimited for negligence and negligent supervision. *Id.* Hernandez Framing had performed the framing work on the faulty crawl space cover. *Id.* Z & H and Hayden had both inspected Hernandez Framing's work after it

was completed. *Id.* Plumbing Unlimited had access to the crawl space between the time Hernandez Framing completed its framing work and Richardson's accident. *Id.*

Hernandez Framing and Z & H moved for summary judgment on Richardson's claims, arguing that they were immune from liability under section 72-209(3), as co-employees of Richardson. *Id.* They asserted that Hayden was the statutory employer of all of the LLC employees on the jobsite, including Richardson. *Id.* The LLCs argued that, because Hayden was the statutory employer of all the employees, they were co-employees with Richardson and therefore immune from liability pursuant to section 72-209(3). *Id.* The district court agreed, and granted summary judgment in favor of Hernandez Framing and Z & H. *Id.*

Richardson appealed and asserted two primary arguments. First, he argued that only natural persons could be considered employees under the Act and therefore the LLCs could not be statutory employees of Hayden. *Id.* at 352, 470 P.3d at 1161. Second, he contended that the co-employee immunity in section 72-209(3) only extended to a statutory employer's direct employees and could not be extended to the LLC's employees. *Id.* This Court rejected both arguments. *Id.* at 352–53, 470 P.3d at 1161–62.

The Court began its analysis by considering the relationships between Hayden and the LLCs. *Id.* at 351, 470 P.3d at 1160. It concluded that Hayden was Richardson's statutory employer and that it was also the statutory employer of the LLC's employees. *Id.* It then stated that, because Richardson named as defendants both the LLCs' unknown employees and the LLCs themselves, to prevail, the LLCs would have to establish that they themselves, rather than their employees, were Hayden's statutory employees and were thus covered by the co-employee immunity. *Id.*

The Court then turned to Richardson's arguments for why the LLCs could not be Richardson's co-employees. First, it considered the argument that only natural persons could be employees. *Id.* It examined the Act's definition of employee, which uses the word "person." *Id.* The Act, in turn, defines "person" to include partnerships, corporations and other business entities. *Id.* Putting these two definitions together, it rejected Richardson's first argument because the Act does not limit the definition of employees to natural persons. *Id.*

Next, the Court addressed Richardson's direct employee argument. *Id.* at 352, 470 P.3d at 1161. It concluded that this Court's prior decision in *Blake v. Starr*, 146 Idaho 847, 203 P.3d 1246 (2009), supported the conclusion that the co-employee immunity extended to the LLCs and their employees. Specifically, *Blake* held that the purposes of Idaho's worker's compensation law are

20

furthered by the conclusion that a statutory employer's employee and its subcontractor's employee are co-employees for purposes of section 72-209(3):

> [A] statutory employer's immunity from suit under [Idaho Code section] 72-223 must logically and necessarily be extended to its employees through [Idaho Code section] 72-209(3) to fulfill the purpose of the Idaho Worker's Compensation [Law]. To hold otherwise would undermine the entire framework of liability and immunity provided by the worker's compensation law.

*Richardson*, 167 Idaho at 352, 470 P.3d at 1161 (all but first alteration in original) (quoting *Blake*, 146 Idaho at 851, 203 P.3d at 1250). It determined that this statement disposed of Richardson's second argument. *Id.*

The Court then cited to the Act's definitions of "employer" and "person," and concluded that Hayden was the statutory employer of the LLCs because the LLCs were hired by Hayden or its subcontractors to work on the property. *Id.* It held that because the LLCs were also employees of Hayden, they were Smith's co-employees and entitled to avail themselves of the co-employee immunity in section 72-209(3). *Id.* at 352–53, 470 P.3d at 1161–62.

I was not a member of this Court when it decided *Richardson*. While I agree that the Act's definitions do not limit employees to natural persons and that a statutory employer's employees may avail themselves of the co-employee immunity in section 72-209(3), I do not agree that the LLCs were statutory employees based solely on the fact that Hayden entered into contracts with them.

The fatal flaw in the *Richardson* analysis is its assumption that any contract between a principal and another party constitutes an employee-employer relationship under the Act. However, as discussed above, the Act recognizes a distinction between employees and independent contractors. One is covered by Idaho's Worker's Compensation Law and the other is not. A contract of hire is generally required to give rise to a private employment relationship. The hallmark of a contract of hire is the right to control the time, manner, and method of the employee's work. If the right to control does not exist, and the contracting party only has the right to require the results of the contract, then the relationship is one of principal-independent contractor. Thus, even in the face of an express contract between two parties, the four-factor right to control test must be applied to determine whether someone is an employee or an independent contractor.

The mandatory application of the four-factor test when determining whether someone is an employee or independent contractor is borne out by this Court's decisions analyzing whether individuals were entitled to worker's compensation benefits. *E.g.*, *Daleiden*, 139 Idaho at 468–70,

21

80 P.3d at 1069–71; *Kiele*, 127 Idaho at 683–85, 905 P.2d at 84–86; *Shriner*, 141 Idaho at 231–32, 108 P.3d at 378–79. If the Act's definition of employer was so broad as to encompass any contractual relationship, there would be no need to conduct this analysis. Every contract, express or implied, would give rise to employment and thereby establish a right to benefits. However, we have never applied such a broad interpretation to the Act. Instead, we have steadfastly adhered to the distinction between employees and independent contractors when deciding whether a claimant has established a right to benefits. Nothing in the Act suggests that we should ignore this distinction when analyzing co-employee immunity.

Absent from the *Richardson* opinion is any discussion of the distinctions between employees and independent contractors, the right to control, or the four-factor test. Instead, the decision only refers to the LLCs as subcontractors of Hayden. 167 Idaho at 347–48, 470 P.3d at 1156–57. Often that relationship is equivalent to that of principal-independent contractor. But without more information, it is impossible to know for certain. What I am certain of, however, is that the mere fact that the parties entered into a contract does not establish that they entered into an employee-employer relationship.

Importantly, nothing in the four-factor right to control test would have changed the fact that Hayden was secondarily liable for Richardson's worker's compensation benefits under Idaho Code section 72-216. Nor does it change the fact that, had Richardson sued Hayden for the injuries he suffered in the course of his work, Hayden would have been immune from that suit as a category one statutory employer. Idaho Code § 72-223(1). Our prior decisions concerning whether *third parties* are immune from suit by *employees of their contractors or subcontractors* remain good law. *Richardson* went too far, however, when it assumed that a general contractor's statutory employer relationship with the *employees* of its subcontractors and contractors meant it was also the statutory employer of the *subcontractors and contractors themselves*.

"When there is controlling precedent on questions of Idaho law, 'the rule of stare decisis dictates that we follow it, unless it is manifestly wrong, unless it has proven over time to be unjust or unwise, or unless overruling it is necessary to vindicate plain, obvious principles of law and remedy continued injustice.'" *Greenough v. Farm Bureau Mut. Ins. Co. of Idaho*, 142 Idaho 589, 592, 130 P.3d 1127, 1130 (2006) (quoting *Houghland Farms, Inc. v. Johnson*, 119 Idaho 72, 77, 809 P.2d 978, 983 (1990)). In *Richardson*, this Court failed to properly analyze and apply Idaho worker's compensation law concerning the distinctions between employees and independent

contractors. When it failed to apply the four-factor right to control test to the LLCs' contractual relationships with Hayden, this Court failed to properly analyze whether the LLCs were employees of Hayden. As a result, *Richardson* is manifestly wrong and I believe it must be overruled.

The district court erred when it relied on *Richardson* to conclude that Excel was Smith's statutory employee. Application of the four-factor right to control test establishes that Excel was an independent contractor, not an employee of Amalgamated. Therefore, Excel is not entitled to avail itself of the co-employee immunity contained in section 72-209(3). I would therefore reverse the district court's decision granting summary judgment in favor of Excel.

### C. Idaho Code section 72-223 is inapplicable to the determination of whether Amalgamated was Excel's employer.

The majority's analysis focuses on the wrong statutory provision when analyzing whether Amalgamated is Excel's statutory employer. It analyzes the issue under the provisions of section 72-223(1), which concerns the liability of third parties other than the employer of the injured workman:

> The right to compensation under this law shall not be affected by the fact that the injury, occupational disease or death is caused under circumstances *creating in some person other than the employer* a legal liability to pay damages therefor, *such person so liable being referred to as the third party*. Such third party shall not include those employers described in section 72-216, Idaho Code, having under them contractors or subcontractors who have in fact complied with the provisions of section 72-301, Idaho Code; nor include the owner or lessee of premises, or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor or for any other reason, is not the direct employer of the workmen there employed.

Idaho Code § 72-223(1). The statute defines a third party as someone other than the employer of the injured worker. *See id.* It then goes on to exempt certain people from the definition of third party. *See id.*

The majority looks to the language of section 72-223(1) to determine whether Amalgamated was Excel's employer. However, Amalgamated is Smith's employer and therefore outside the scope of the statute. By its own terms, section 72-223(1) only applies to third parties who are not the injured party's employer. The language of section 72-223(1) is not applicable to Amalgamated in this instance.

The analysis would be different if Excel's employee had been injured on the job and sued Amalgamated for his injuries. In that case, the statute would be applicable to determine whether Amalgamated was the injured employee's statutory employer. But that is not the case here.

23

Moreover, Amalgamated would not need to avail itself of the category one or two statutory immunities contained in section 72-223(1). As Smith's employer, it paid his worker's compensation benefits and is therefore immune pursuant to the exclusive remedy provisions of the Act. *See* I.C. §§ 72-209(1), 72-211.

However, the language of section 72-223(1) is applicable to Excel. It is a third party that Smith alleges is liable for his injuries. Excel has not argued, nor does it appear the facts would establish, that it is exempt from liability as either a category one or category two statutory employer of Smith. Rather, section 72-223 establishes that Excel is a third party who may be sued for Smith's injuries.

For these same reasons, I also believe that this Court's prior decision in *Robison v. Bateman-Hall, Inc.*, 139 Idaho 207, 76 P.3d 951 (2003), is inapplicable to the determination of whether Amalgamated is Excel's statutory employer. As such, I have no basis to conclude that it is manifestly wrong or to overrule it.

For the reasons discussed above, I would hold that the district court erred in granting summary judgment in favor of Excel. I would also hold that there is no genuine issue of material fact that Excel was an independent contractor of Amalgamated and therefore not immune pursuant to section 72-209(3). I would therefore reverse the district court's summary judgment and remand the matter for further proceedings consistent with this decision.

BURDICK, J. pro tem, CONCURS.