# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 50933

SENTRY DYNAMICS, INC., )
)
   Plaintiff-Respondent-Cross Appellant, ) Boise, October 2024 Term
)
v. ) Opinion filed: May 2, 2025
)
ADA COUNTY, a political subdivision of the ) Melanie Gagnepain, Clerk
State of Idaho; and ROBERT H. MCQUADE, )
Assessor of Ada County, )
)
   Defendants-Appellants-Cross )
   Respondents. )

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Cynthia Yee-Wallace, District Judge.

The judgment of the district court is <u>affirmed in part</u> and <u>reversed in part</u>.

Ada County Prosecutor's Office, Boise, for Appellant-Cross Respondents. James K. Dickinson argued.

Smith & Malek, PLLC, Boise, and Stoel Rives LLP, Boise, for Respondent-Cross Appellant. Kolby Reddish argued.

_____

MOELLER, Justice.

This appeal concerns a public records request made by Sentry Dynamics, Inc. ("Sentry") to the Ada County Assessor's Office (hereinafter "the County," "Ada County," or "the Assessor") for a list of all property owners' names and addresses in Ada County. Ada County, believing that Sentry intended to sell the data to others for use as a mailing or telephone list, denied the request pursuant to Idaho Code section 74-120(1). Sentry filed a complaint in district court seeking access to the records. The district court ultimately ordered Ada County to release the records to Sentry in an electronic format of Ada County's choosing. Ada County appealed. Sentry later cross-appealed, requesting that the records be provided in the same shapefile format in which Ada County stores

1

its data. For the reasons set forth below, we affirm the district court's order in part and reverse it in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ada County maintains and operates multiple websites with publicly accessible information, such as the Ada County Assessor's website and the Ada County Assessor Public Property Tax system. As part of its procedures, Ada County maintains Geographic Information Systems ("GIS") and Computer Assisted Mass Appraisal ("CAMA") data, which includes every Ada County property owner's name and mailing address.[1]

Sentry is an Idaho corporation that provides property data and custom data solutions to its clients. From 2006 to 2018, Sentry obtained GIS and CAMA data, including property owner names and addresses, from Ada County via its annual subscription to the County's open data portal. Historically, Sentry signed a "Requestor's Assurance of Compliance," assuring the County that Sentry would not use the data as a mailing list. Sentry would then either download the data via the open data portal or receive a compact disc with the data. When Sentry downloaded the data through the Ada County open portal, it would receive it in a shapefile format. A shapefile is a simple data base format ("dbf") for storing geometric locations and attribute data, which is used in geographic mapping software. The shapefiles store data depicting the graphic representations of the geometric data so that the information can be converted to a table data set. When the shapefile data is uploaded to the GIS system, the geometric data is converted into an image that can be overlaid on a map.

In 2019, for the first time since it began requesting data in 2006, Sentry was denied access to the information it had received in the prior years from its annual paid subscription. The record does not reflect why Sentry was denied access. From 2019 to 2021, Sentry apparently did not request the data, although it is unclear why it did not.[2] On February 7, 2022, Sentry again submitted a public records request to Ada County requesting "Assessor data, including owner names and addresses" of Ada County property owners. In the request for access form, question four asks "Will

---

[1] GIS is "a computer system for capturing, storing, checking, and displaying data related to positions on Earth's surface." *GIS (Geographic Information System)*, National Geographic Society (last visited Apr. 23, 2025) https://education.nationalgeographic.org/resource/geographic-information-system-gis/. CAMA is "The application of computer technology and statistical techniques to the solution of appraisal problems; used in assessment administration to derive value indications in the cost and sales comparison approaches . . . ." *Orban v. Alexandria Tp.*, 21 N.J. Tax 1, 7 n.4 (N.J. Tax Ct. 2003) (quoting *Computer-assisted mass appraisal*, *The Dictionary of Real Estate Appraisal* 57 (4th ed. 2002)).
[2] Neither the record nor the parties' briefing address this question.

2

*you* be using this data to make a mailing list?" and provides a box to check yes or no. (emphasis added). Sentry checked "no."

Unsatisfied with this representation alone, Ada County denied Sentry's public records request. In the denial letter sent on February 22, 2022, the Assessor stated that "the Public Records Act [specifically Idaho Code section 74-120(1)] prohibits the County from disclosing any list of persons that will be used as a mailing list or telephone number list without first securing the permission from those on the list." The Assessor informed Sentry that it would only grant the public records request if Sentry signed an "Acknowledgement and Agreement" (the "Agreement") form that, among other things, sought an assurance to the County that Sentry would not allow *third parties* to use the data provided by Ada County for mailing and telephone list purposes. The Agreement form contained the following terms:

1. Ada County Assessor's Office makes data available through an open portal for the non-commercial benefit of the public. Sentry Dynamics, Inc., ("Sentry Dynamics") has requested unlimited access to the open data portal based upon the products and services it provides to its customers.

2. Sentry Dynamics understands and acknowledges that parcel owner and address information Ada County Assessor makes available through the open data portal may not be used for a mailing or telephone list, except as provided in Idaho Code § 74-120. *Sentry Dynamics agrees that parcel owner and mailing address information will not be used for a mailing list by Sentry Dynamics or any of its clients and customers*.

3. Sentry Dynamics agrees to add to its website Terms of Use, a term specifically prohibiting the use of parcel owner and address information for a mailing list. Sentry Dynamics agrees to take all reasonable steps to enforce this term of use.

4. Sentry Dynamics agrees the owner names and mailing addresses available through the open data portal may not be redistributed, published, sold, or otherwise disclosed without Ada County Assessor's prior written consent.

5. Ada County Assessor reserves the right to terminate access to the open data portal at any time, with or without notice.

6. Sentry Dynamics agrees to defend, indemnify, and hold Ada County, its officers, agents, and employees harmless for all claims, losses, actions, damages, judgements, costs, expenses, and/or injuries to persons or property arising out of or in connection with Sentry Dynamics' use of information available through the open data portal. In the event Ada County is alleged to be liable on account of any activities, acts, or omissions of Sentry Dynamics its officers, agents or employees then Sentry Dynamics shall defend such allegations through counsel chosen by Ada County and shall bear all costs, fees, and expenses of such defense, including, but not limited to, all attorney fees and expenses, court costs, and expert witness fees and expenses.

3

(Emphasis added.)

Sentry refused to sign the Agreement. On April 25, 2022, it filed a complaint in Ada County district court seeking a writ of mandate requiring Ada County to produce the requested public records, as well as a declaratory judgment. In its complaint, Sentry described the records sought as "all underlying GIS and CAMA data . . . ."

After Ada County filed its answer, Sentry filed a motion for summary judgment. Subsequently, Ada County filed a motion to dismiss, arguing that the district court lacked subject matter jurisdiction over the action since Sentry filed a "complaint" rather than a "petition" as required by Idaho Code section 74-115(1). The district court denied Sentry's first motion for summary judgment, ruling that the factual record was insufficient to grant summary judgment. Additionally, the district court denied Ada County's motion to dismiss, holding that Sentry had followed the proper procedure for appealing agency decisions denying records requests.

Sentry then filed a second motion for summary judgment. In ruling on that motion, the district court first determined that Sentry's complaint should be treated as a petition to compel disclosure of public records, thereby invoking its jurisdiction. Addressing the merits of the request, the court held that the information Sentry sought was a public record and constituted a "list of persons" under Idaho Code section 74-120(1)(a) and (b). However, it further reasoned that because Sentry agreed that *it* would not use the records as a list for mass mailings, it was entitled to examine the records and obtain an electronic copy from the County. It further concluded that although Ada County could choose the format, it must provide Sentry with an electronic copy of its records.

Ada County timely appealed, arguing the district court erred because Sentry failed to agree that it would not provide the County's data to third parties for mailing list purposes. Ada County further maintains that the court erred by dictating that it provide an "electronic" copy of its records. Sentry has cross appealed, arguing that the district court should have ordered Ada County to turn over the records in its original shapefile format.

## II. STANDARD OF REVIEW

When we review a trial court's ruling on a motion for summary judgment, we apply the same standard used by the trial court originally ruling on the motion. *Krinitt v. Idaho Dep't of Fish & Game*, 162 Idaho 425, 428, 398 P.3d 158, 161 (2017) (quoting *Robison v. Bateman-Hall, Inc.*, 139 Idaho 207, 209, 76 P.3d 951, 953 (2003), *overruled on other grounds by Smith v. Excel Fabrication, LLC*, 172 Idaho 725, 535 P.3d 1098 (2023)). Pursuant to the Idaho Rules of Civil

4

Procedure, a court "must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "If the evidence reveals no disputed issues of material fact, what remains is a question of law, over which this Court exercises free review." *Krinitt*, 162 Idaho at 428–29, 398 P.3d at 161–62 (quoting *Robison*, 139 Idaho at 209, 76 P.3d at 953)."This Court exercises free review over questions of law, including the interpretation of a statute." *Ward v. Portneuf Med. Ctr., Inc.*, 150 Idaho 501, 504, 248 P.3d 1236, 1239 (2011).

## III. ANALYSIS

### A. The title and content of the pleadings did not deprive the district court of jurisdiction.

Ada County maintains that the district court lacked subject matter jurisdiction over Sentry's petition for two reasons. First, Ada County contends that Sentry's *complaint* did not comply with the Idaho Public Records Act's ("PRA") appeal procedure, which requires a *petition* to commence an action. Second, Ada County argues that Sentry's complaint requested different records than those requested in its initial public records request; therefore, it amounted to a new public records request. We will address each contention in turn.

> 1. *Sentry did not deprive the district court of subject matter jurisdiction by mistitled its pleading as a "complaint" rather than as a "petition."*

Ada County's first argument on appeal is that the district court erred by failing to dismiss Sentry's public records lawsuit because Sentry failed to follow the PRA appeal procedure when it filed a "complaint," rather than a "petition." Ada County maintains that, by doing so, Sentry failed to properly invoke the district court's subject matter jurisdiction.

Idaho Code section 74-115(1) sets forth the procedure for a records requestor to appeal a public official's denial of a records request. That section provides:

> The sole remedy for a person aggrieved by the denial of a request for disclosure is to institute proceedings in the district court of the county where the records or some part thereof are located, to compel the public agency to make the information available for public inspection in accordance with the provisions of this chapter. The *petition* contesting the public agency's decision shall be filed within one hundred eighty (180) calendar days from the date of mailing of the notice of denial or partial denial by the public agency. . . . The time for responsive pleadings and for hearings in such proceedings shall be set by the court at the earliest possible time, or in no event beyond twenty-eight (28) calendar days from the date of filing.

I.C. § 74-115(1) (emphasis added).

We begin by noting that "[t]his Court has adopted a presumption that courts of general jurisdiction have subject matter jurisdiction unless a party can show otherwise." *Ackerschott v. Mountain View Hosp., LLC*, 166 Idaho 223, 237, 457 P.3d 875, 889 (2020) (quoting *Troupis v. Summer*, 148 Idaho 77, 80, 218 P.3d 1138, 1141 (2009)). Because Idaho district courts are courts of general jurisdiction, we presume that the district had jurisdiction over Sentry's complaint. Nevertheless, a lack of "[s]ubject-matter jurisdiction can be raised at any time," even for the first time on appeal. *Id.* "Whether a trial court had subject matter jurisdiction over a proceeding is an issue of law that this Court reviews de novo." *State v. Wolfe*, 158 Idaho 55, 60, 343 P.3d 497, 502 (2015). For the following reasons, we conclude that Ada County has not overcome the presumption that the district court had subject matter jurisdiction.

Idaho Rule of Civil Procedure 1(b) states that the "rules should be construed and administered to secure the just, speedy and inexpensive determination of every action and proceeding." I.R.C.P. 1(b). Rule 1 essentially instructs judges not to exalt form over substance. Likewise, Rule 8(e) mandates that "[p]leadings must be construed so as to do justice." I.R.C.P. 8(e). While Sentry should have captioned its initial pleading before the district court as a "petition" rather than as a "complaint" in accordance with section 74-115(1), this was not a fatal error. Considering both the letter and spirit of Rules 1(b) and 8(e), we conclude that it would be unjust to dismiss Sentry's action merely because it mistitled its pleading as a complaint, rather than as a petition.

While there may be a substantive distinction between a complaint and a petition,[3] Ada County did not establish that it was prejudiced by having to respond to a complaint rather than a petition. To conclude the district court lacked jurisdiction because of this titling defect would offend the directive in Rule 1(b) to construe and administer the Idaho Rules of Civil Procedure to provide a speedy and inexpensive determination of the action. Because the name of the pleading has not otherwise affected the course of proceedings, the district court did not err in construing Sentry's complaint as a petition for purposes of Idaho Code section 74-115(1). Therefore, we

---

[3] In a civil proceeding, a complaint generally refers to the pleading initiating a lawsuit where a plaintiff seeks relief against a defendant based on a legal cause of action, such as in a personal injury or breach of contract case. A petition generally refers to a pleading addressed to the court by a petitioner asking the court to order specific civil relief for the petitioner from a respondent or from the court itself, such as in family law proceedings, requests for judicial review, or post-conviction relief. Notwithstanding this historic distinction, we are mindful that these terms are often used interchangeably by attorneys, jurists, and the drafters of legislation.

conclude that the district court had subject matter jurisdiction and properly permitted Sentry to institute proceedings under the PRA.

2. *The records identified in Sentry's complaint did not vary from the records originally requested.*

Ada County also maintains that Sentry's complaint fails on another front; namely, Sentry's February 2022 public records request materially differed from its later complaint because each requested different records, thereby depriving the district court of jurisdiction. Specifically, the February 2022 request sought "assessor data, including owner names and addresses," but in its complaint Sentry sought "all underlying GIS and CAMA data for Defendant Ada County." Ada County argues that the inconsistency in the type of records sought converts the action from an appeal into a "new, albeit jurisdiction-less standalone filing to obtain records . . . ."

As to the difference in terminology between Sentry's initial public records request and how it described the records sought in its complaint, Sentry responds by noting that Ada County presented no evidence to suggest that it was uncertain which records request was being challenged in the complaint. Therefore, Sentry argues it is immaterial that the complaint did not use the exact same terminology as in the public records request. After considering the parties' respective arguments below, the district court concluded that there was no confusion as to the records that Sentry sought. The change in language was not an indication that new or different data was sought; rather, it was a clarification of the original public records request.

We agree with the district court's analysis. The difference in phrasing between Sentry's original records request and its complaint did not change the actual records it was requesting. Indeed, it can be seen as early as in Ada County's Answer that it understood that the records requested in the original request and the complaint involved the same data: "Answering Paragraph 7 of Petitioner's Complaint, Respondents admit Petitioner requested Ada County Assessor data, which includes GIS and CAMA data, as well as property owner names and mailing addresses on February 7, 2022." Thus, Ada County understood that GIS and CAMA data are just technical terms for what Sentry had requested in its original complaint, not substantively different records. Absent any substantive difference in the records Sentry was requesting, we will not treat the difference in terminology as a new and distinct records request that deprived the district court of jurisdiction. Therefore, we again conclude that Sentry properly invoked the district court's subject matter jurisdiction over the present action and affirm the district court's decision in this regard.

7

**B. The records sought by Sentry are public records and constitute a "list of persons" under Idaho Code section 74-120(1); therefore, Ada County can require Sentry to assure that the list will not be used for mailing purposes by its clients and customers.**

Having concluded that Sentry's complaint was properly before the district court, we turn to whether Sentry is entitled to the records it requested. The PRA grants a general right to the public to examine and copy public records of the State. I.C. § 74-102(1). Under the PRA, "public records are presumed 'open unless provided otherwise by statute.' " *Cover v. Idaho Bd. of Corr.*, 167 Idaho 721, 727, 476 P.3d 388, 394 (2020) (quoting *Wade v. Taylor*, 156 Idaho 91, 97, 320 P.3d 1250, 1256 (2014)). "This Court narrowly construes exemptions to the disclosure presumption." *Bolger v. Lance*, 137 Idaho 792, 796, 53 P.3d 1211, 1215 (2002). An agency withholding public records "bears the burden of persuasion and must 'show cause,' or prove, that the documents fit within one of the narrowly-construed exemptions." *Id.*

The parties agree that the information requested constitutes public records under the PRA; thus, the question is whether the information falls within an exemption from disclosure. At issue in this case is the "mailing list" exception outlined in Idaho Code section 74-120(1), which provides:

> (a) No agency may distribute or sell for use as a mailing list or a telephone number list any list of persons without first securing the permission of those on the list; and

> (b) No list of persons prepared by the agency may be used as a mailing list or a telephone number list except by the agency or another agency without first securing the permission of those on the list.

I.C. § 74-120(1)(a) and (b). Thus, under Idaho Code section 74-120(1), an agency may not prepare or distribute a "list of persons" for use as a mailing or telephone number list without "securing the permission of those on the list." While an agency may not distribute a list of persons for use as a mailing or telephone list, "this section does not prevent an individual from compiling a mailing list or a telephone number list by examination or copying of public records, original documents or applications otherwise open to public inspection." I.C. § 74-120(2).

"The interpretation of a statute must begin with the literal words of the statute," which "must be given their plain, usual, and ordinary meaning[,] and the statute must be construed as a whole." *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 893, 265 P.3d 502, 506 (2011) (internal quotation marks and citation omitted). If a statute is not ambiguous, we do not construe it, but simply follow the law as written. *Id.* (citation omitted). Moreover, "[w]e have consistently held that where statutory language is unambiguous, legislative history and other extrinsic evidence

8

should not be consulted for the purpose of altering the clearly expressed intent of the legislature." *Id.* (quoting *City of Sun Valley v. Sun Valley Co.*, 123 Idaho 665, 667, 851 P.2d 961, 963 (1993), *abrogated on other grounds by Verska*, 151 Idaho 889, 265 P.3d 502)). Applying the literal words of the statute, and giving them their plain and ordinary meaning, we hold as follows.

      1.   *The district court correctly held that the requested data constitutes a "list of persons."*

Not all public records are treated equally under the PRA. As noted above, there are different requirements for releasing data when it consists of a "list of persons prepared by the agency." Idaho Code § 74-120(1)(a) and (b). Because Sentry requested "owner names and addresses," the district court found that Sentry was in fact requesting a "list of persons:

> Here, the information requested by Sentry Dynamics not only includes GIS and CAMA data, but also includes "owner names and addresses." The [c]ourt finds that because Sentry Dynamics has requested such "owner names and addresses," it is in fact requesting a "list of persons" under Idaho Code § 74-120(1)(a) and (b). This is evidenced by the way in which Sentry Dynamics requested the data, and the way in which it is described by both parties.

(Internal citations omitted.) Our de novo review leads us to the same conclusion the district court reached.

A list is defined as "a simple series of words or numerals (such as the names of persons or objects)." *List*, Merriam-Webster Collegiate Dictionary (10th ed. 1993). The information sought from the Assessor is a compilation of data containing the names and addresses of every property owner in Ada County. Of course, other data is included that digitally describes the geographic coordinates of each parcel owned. It is difficult to comprehend how records that are systematically organized to set forth a series of property owners and their addresses cannot be deemed a list. It would be akin to arguing that a dictionary is not a list of words merely because it contains additional information.

For Ada County to adequately respond to Sentry's request, which specified it was seeking "Assessor data, including owner names and addresses," it would essentially be providing a list, regardless of whether it was formatted in a particular manner or comingled with other data. For these reasons, we conclude that the district court did not err in finding that the data Sentry was seeking constituted a "list of persons."

2. *Absent an assurance by Sentry that the data requested will not be "used as a mailing list or a telephone number list," Ada County may refuse to provide a compiled and formatted list of the data.*

Generally, the custodian of public records "shall make no *inquiry* of any person who requests a public record . . . ." I.C. § 74-102(5). However, an exception exists where the requested public record may be used as a "mailing or telephone list." I.C. § 74-102(5)(b). In such cases, the PRA requires an agency to "ensure" that the list will not be used for such purposes before they distribute the records:

> (5) The custodian shall make no inquiry of any person who requests a public record, except:
>
> . . . .
>
> (b) *To ensure that the requested record or information will not be used for purposes of a mailing or telephone list* prohibited by section 74-120, Idaho Code, or as otherwise provided by law; . . . .

I.C. § 74-102(5)(b) (emphasis added).

In the past, Sentry has made assurances to Ada County that "it" will not use the data it receives from Ada County as a mailing or telephone list. However, things changed in 2019 and 2022 when Ada County required Sentry to more broadly assure that "Sentry Dynamics agrees that parcel owner and mailing address information will not be used for a mailing list by Sentry Dynamics or any of its clients and customers." Sentry has refused to agree to this requirement.

Sentry contends that Idaho Code section 74-120(1) does not explicitly prohibit a person from requesting public information and then turning around and selling the very same data to a third party who intends to use it as a mailing list. While this is true, Sentry's argument does not address the plain language of the PRA, which expressly prohibits an agency from distributing (i.e., providing to Sentry) a list of persons for use as a mailing list or telephone number list without first obtaining the permission of those on the list. Section 74-120(1)(a) states that "no agency may distribute . . . *for use as a mailing list or a telephone list* any list of persons without first securing the permission of those on the list." I.C. § 74-120(1)(a) (emphasis added). Likewise, section 74-120(1)(b) provides that "[n]o list of persons prepared by the agency may be *used as a mailing list or a telephone number list* except by the agency . . . ." I.C. § 74-120(1)(b) (emphasis added).

The fact that Sentry itself will not be using the list of persons as a mailing list or telephone list is of no moment. Sentry was unwilling to assure the Assessor that the data sought would not be used as a mailing or telephone number list by Sentry's customers. While Sentry has repeatedly

asserted that *it* will not directly use the data as a mailing list, it does not promise that it will not sell this data to clients or customers who will in turn use it as a mailing list. Section 74-120(1)(b) prohibits use of the information as a mailing list by *any entity except the County*. Sentry's website advertises that "[b]efore switching" to Sentry's extensive property database, "many of our customers . . . dealt with a 25%+ return rate on direct mail due to incorrect addresses, ownership, or formatting." This is the key concern of the Assessor and the reason Ada County maintains that, without Sentry's assurances that parties downstream from Sentry will not use the data for mailing list purposes, it cannot legally provide the information Sentry seeks.

Ada County's concerns are well taken given the express language of section 74-120(1). If Sentry, or any party requesting the data for that matter, cannot assure the Assessor that the data provided will not be used as a mailing list, the requestor must manually compile its own mailing list from the records generally available to the public—they are not entitled to the agency's formatted data. Therefore, we hold that the district court erred in ordering Ada County to provide the records to Sentry. Although this holding is dispositive of the appeal, we recognize that this same issue may recur in the future. Therefore, to provide guidance going forward, and in the interest of judicial economy, we will address the remaining arguments asserted by Sentry.

3. *While paragraphs 3, 4, and 6 of Ada County's "Acknowledgment and Agreement" form went beyond the mere inquiry permitted under Idaho Code section 74-102(5)(b), the remaining portions comply with the PRA.*

As noted, Ada County requested that Sentry sign an "Acknowledgement and Agreement" form before providing any records. On appeal, Ada County alleges that its Agreement is a permissible way to "ensure" requestors do not use public information in violation of the PRA. Sentry, on the other hand, argues that the statute's use of "inquiry" does not contemplate requiring a party requesting public records to "affirmatively swear that users downstream from the initial disclosure will not use the names as mailing lists." Rather, the statute only allows a custodian to make an "inquiry" of the original recipient's intended use of the records. Thus, Sentry maintains that Ada County's requirement that it sign the Agreement was not a mere inquiry but a de facto denial of the public records request.

Section 74-102(5) begins with the statement that the "custodian shall make no inquiry of any person who requests a public record, except . . . [t]o ensure that the requested record or information will not be used for purposes of a mailing or telephone list . . . ." I.C. § 74-102(5)(b). A plain language review of this provision requires us to give the words of the statute their ordinary

11

meaning. *State v. Taylor*, 160 Idaho 381, 385, 373 P.3d 699, 703 (2016). An "inquiry" is defined as a "question someone asks to elicit information . . . . The act or process of posing questions to elicit information . . . ." *Inquiry*, Black's Law Dictionary (12th ed. 2024). "Ensure," on the other hand, is defined as "to make sure, certain, or safe." *Ensure*, Merriam-Webster, *supra*. Combining these two definitions, an inquiry may only seek to elicit information to verify that the information will not be used for an impermissible purpose. An inquiry cannot create additional obligations or place burdens on a party such as some of the provisions in the Agreement seek to do.

We agree with the district court's conclusion that Ada County went too far in requiring Sentry to agree to paragraphs 3, 4, and 6 of the Agreement. Paragraph 3 asks Sentry to "add to its website Terms of Use, a term specifically prohibiting the use of parcel owner and address information for a mailing list. Sentry Dynamics agrees to take all reasonable steps to enforce this term of use." This is not an inquiry but a demand that Sentry adjust its Terms of Use policies. Paragraph 4 requires Sentry to agree that the "owner names and mailing addresses [it receives] through the open data portal may not be redistributed, published, sold, or otherwise disclosed without Ada County Assessor's prior written consent." Again, this goes far beyond seeking assurances and effectively grants Ada County direct oversight of Sentry's business dealings. Finally, paragraph 6 asks Sentry to indemnify Ada County for the public records requested. An indemnification agreement is not a mere inquiry but a contract term that assigns liability to one or more of the parties. Because the district court correctly concluded that paragraphs 3, 4, and 6 of the Agreement go beyond the mere "inquiry" permitted under section 74-102(5), we affirm the district court's invalidation of these provisions.

Likewise, we affirm the district court's implicit conclusion that paragraphs 1, 2, and 5 are consistent with the language of Idaho Code section 74-102(5). The court wrote: "Ada County may require a requestor to verify and affirm that the requested list of persons will not be used as a mailing or telephone list, and the [PRA] does not preclude Ada County from requiring such verification and/or affirmation to be under oath, for example." Paragraph 1 is merely a recital of the parties and their functions. Paragraph 2 notes the requirements of Idaho Code section 74-120 and requires Sentry to agree that "parcel owner and mailing address information will not be used for a mailing list by Sentry Dynamics or any of its clients and customers." This is the type of assurance contemplated by section 74-102(5). Paragraph 5 recognizes the "Ada County Assessor reserves the right to terminate access to the open data portal at any time, with or without notice."

12

As the district court found, "nothing . . . requires Ada County to provide a requestor with access to an open data portal" if the data is otherwise available in another format.

Inasmuch as paragraphs 1, 2, and 5 are consistent with Idaho Code section 74-102(5), we affirm the district court. Under the plain language of the PRA, Ada County was acting within its authority when it required Sentry to agree to these terms before providing the requested data.

### C. The district court erred in requiring Ada County to provide the requested public record in a specified electronic format.

Ada County argues that the district court, notwithstanding its other rulings in the case, erred when it granted Sentry the following declaratory relief:

> Ada County is hereby ordered to allow Sentry Dynamics to examine of [sic] the GIS and CAMA data for Ada County, plus owner names and address [sic], and must provide Sentry Dynamics with a copy of the same, consistent with the terms of this order. Ada County, however, may choose the *electronic format* in which it provides the copy of such information, so long as such copy is a reproduction of the public record and such public record has not been altered or damaged.

(Emphasis added). The County maintains that nothing in the PRA requires it to provide records in an electronic format to a party, especially one that has failed to assure compliance with the PRA.

Idaho Code 74-102(15) provides: "Nothing contained herein shall *prevent* a public agency from providing a copy of a public record in electronic form if the record is available in electronic form and if the person specifically requests an electronic copy." I.C. § 74-102(15) (emphasis added). It argues that the wording of the statute does not mandate delivery of an electronic copy— the statute merely states that an agency is not "prevented" from doing so if it chooses. Thus, section 74-102(15)'s allowance of an electronic copy is entirely optional; thus, a public agency *may* provide an electronic record but is not required to do so.

Sentry maintains that it is merely requesting the ability to copy the electronic shapefile in the same format that Ada County "uses, stores, or maintains the public record." It argues, without supportive authority, that "the format in which [an] agency uses, stores, or retains the public record is part of the public record itself." Additionally, Sentry asserts as a matter of public policy that, "in this digital age, where electronic records often include valuable metadata, an agency's ability to alter the form of a public record has the potential to erase vital electronically stored data."[4]

---

[4] Of course, the release of metadata that may be embedded in an original public record raises profound policy concerns left unaddressed by both parties. For example, while a quitclaim deed recorded with a county assessor may contain evidence of alterations, it might also contain artifacts of attorney notes, records of deleted first drafts, and stray

13

To analyze this question, we return to the text of the PRA, where it explicitly enumerates the public's rights when it comes to obtaining public records. For example, in addition to the reference to electronic records in Idaho Code section 74-102(15), subsections (1) through (3) provide:

> (1)  Every person has a *right to examine and take a copy* of any public record of this state and there is a presumption that all public records in Idaho are open at all reasonable times for inspection except as otherwise expressly provided by statute.
>
> (2)  The *right to copy public records* shall include the *right to make photographs or photographic or other copies* while the records are in the possession of the custodian of the records using equipment provided by the public agency or using equipment designated by the custodian.
>
> (3)  Additionally, the custodian of any public record *shall give the person, on demand, a certified copy of it if the record* is of a nature permitting such copying or shall *furnish reasonable opportunity to inspect or copy such record*.

Idaho Code § 74-102(1)–(3) (emphasis added). Additionally, subsection (8) specifies that the "[e]xamination of public records under the authority of this section must be conducted during regular office or working hours unless the custodian shall authorize examination of records in other than regular office or working hours." I.C. § 74-102(8).

Reading the provisions of the PRA, we conclude that it grants considerable deference to the agency acting as custodian of the records in determining the method and format for producing copies of public records. The PRA provides no right to access a public record in an electronic format, let alone a specific electronic format. While Ada County is required to produce the responsive records in its possession—provided the requesting party has complied with the "assurance" requirement in Idaho Code section 74-102(5)(b)—it is under no obligation to provide them in an electronic format. Similarly, the PRA leaves the mode of delivery to the custodial agency. This may be as simple as the custodian providing hard copies to a requester that has made a personal visit to the County Courthouse, delivering the copies via U.S. Mail, emailing the records, or transferring the information through a data portal.

Because the PRA does not require Ada County to produce its records in any specific format, we conclude that the district court erred in reading into the PRA a mandate that the records be delivered to Sentry in an electronic format.

---

comments unseen on the face of the document that were never intended to be part of the public record. Is this the type of "valuable metadata" Sentry is seeking by insisting on receiving electronic files in the same format as the county uses? Gratefully, we leave that topic for another day.

### D. Attorney Fees

Sentry seeks attorney fees pursuant to Idaho Code section 74-116(2) and costs under Idaho Appellate Rule 40. Under section 74-116(2), this Court "shall award reasonable costs and attorney fees to the prevailing party or parties, if it finds that the request or refusal to provide records was frivolously pursued." Because Sentry is not the prevailing party, we deny Sentry's request for attorney fees.

### IV.     CONCLUSION

For the foregoing reasons, the district court's order is affirmed in part and reversed in part. We affirm the district court's ruling that treated Sentry's complaint as a petition to compel disclosure of public records. Likewise, we affirm the district court's conclusion that the different language used to refer to the records in the public records request and the complaint did not deprive the district court of jurisdiction over the action. However, we reverse the district court's order requiring Ada County to produce the requested records. Ada County is not required to produce the records because Sentry has refused to certify that neither its clients nor its customers will use the requested records as a mailing or telephone number list.

To provide guidance moving forward, we affirm the district court's conclusion that paragraphs 3, 4, and 6 of Ada County's "Acknowledgment and Agreement" form were improper because they went beyond mere inquiry as permitted under Idaho Code section 74-102(5)(b). However, we reverse the district court's order requiring Ada County to provide Sentry the records in an electronic format of its choosing. Because the requested records constitute a list of persons and addresses, Ada County was entitled to require that Sentry agree that the list would not be used for mailing purposes—either by itself *or* by a third party. I.C. § 74-120(1)(b). Therefore, while Sentry may still individually review and copy the records as any other citizen can, Ada County is not required to turn over the totality of the records. Moreover, even if Sentry complies with the certification requirement, the County is still not required to produce the records in an electronic format.

Chief Justice BEVAN, Justices BRODY, ZAHN, and MEYER CONCUR.

15