# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 51056-2023

HAROLD LAVELLE RUPP, JR., and
CHRISTINE R. PETERSEN, in their
capacities as the Trustees of the Harold L.
Rupp Sr. Trust, an Idaho trust; and the Veda
J. Rupp Revocable Living Trust, an Idaho
trust,

    Plaintiffs-Appellants,

v.

CITY OF POCATELLO, an Idaho
municipality; MILLENNIAL
DEVELOPMENT PARTNERS, LLC, a Utah
limited liability company; PORTNEUF
DEVELOPMENT, LLC, an Idaho limited
liability company; PORTNEUF BUILDERS,
LLC, an Idaho limited liability company;
KEN PAPE, individually; ARVIL B.
SWANEY, individually; and BRIAN BLAD,
individually,

    Defendants-Respondents,

and

JOHN or JANE DOES 1-10,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, May 2025 Term

Opinion filed: August 19, 2025

Melanie Gagnepain, Clerk

Appeal from the District Court of the Sixth Judicial District of the State of Idaho,
Bannock County. Robert C. Naftz, District Judge.

The decision of the district court is <u>affirmed in part</u> and <u>reversed in part</u>, and the
judgment is <u>vacated</u>.

Olsen Taggart PLLC, Idaho Falls, for Appellants. Nathan M. Olsen argued.

Hall Angell & Associates, LLP, Idaho Falls, for Respondents City of Pocatello and
Brian Blad. Blake G. Hall argued.

Beard St. Clair Gaffney PA, Idaho Falls, for Respondents Portneuf Development, LLC, Portneuf Builders, LLC, Ken Pape. John M. Avondet argued.

Beard St. Clair Gaffney PA, Idaho Falls, for Respondents Millennial Development Partners, LLC, and Avril B. Swaney. Patrick J. Davis argued.

_____

ZAHN, Justice.

This case concerns a dispute over undeveloped real property and whether the district court properly granted summary judgment in light of the parties' ongoing discovery disputes. The Harold L. Rupp Sr. Trust and the Veda J. Rupp Revocable Living Trust (collectively "the Trusts") filed a complaint for declaratory and monetary relief against Respondents, raising claims related to a land development project. Respondents moved for summary judgment. The Trusts filed two motions to continue the proceedings to allow them to complete additional discovery, which the district court denied. The Trusts then filed a late response to the motions for summary judgment, which the district court declined to consider. The district court granted Respondents' motions for summary judgment, dismissed the case with prejudice, and awarded attorney fees to Respondents. The Trusts appealed.

We affirm the district court's denial of the Trusts' motions to continue because the Trusts have not demonstrated that the district court abused its discretion. However, we reverse and remand the district court's grant of summary judgment because the district court failed to analyze the evidence before it and appeared to grant summary judgment as a sanction against the Trusts.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The Trusts own approximately 930 acres of agricultural land located east of the Northgate Interchange off I-15, near the cities of Pocatello and Chubbuck. In 2016, the Idaho Transportation Department embarked on a project to construct the Northgate Interchange. In 2017, the Trusts entered into a Purchase and Sales Agreement ("PSA") with Millennial Development Partners, LLC, a real estate development company, to sell a 150-foot-wide strip of land to be used for construction of a road named Northgate Parkway, which would connect the forthcoming Northgate Interchange with Olympus Drive in Pocatello. The Trusts assert that the PSA obligated Millennial to construct an intersection on Northgate Parkway to provide vehicle access to the Trusts' property, as well as water and sewer stubs and a sewer line. The Trusts also allege that Millennial promised

the Trusts that their property would have additional access points along the Northgate Parkway, including access to an intersection at Olympus Drive.

Millennial, together with Portneuf Development, LLC, entered into a general partnership called Town Center JV ("Town Center"), to construct Northgate Parkway. Millennial also entered into a construction cooperative agreement ("CCA") with the City of Pocatello ("the City") and others concerning the design and construction of the Northgate Exchange and Northgate Parkway. The CCA provided that, once construction of Northgate Parkway was complete, the City would accept full control and jurisdiction over Northgate Parkway between the Northgate Exchange and Olympus Drive.

The Trusts assert that Town Center entered into a partnership with the City, which it calls "the Northgate Partnership." The Trusts assert that the Northgate Partnership needed the water rights associated with the Trusts' property to develop its property, and that it had "a unified purpose of devaluing the Rupp Trust [p]roperty" so it could obtain the property at less than market value and sell it to other developers for a profit.

In December 2018, the Trusts signed an annexation agreement with the City of Chubbuck to annex 300 acres of the Trusts' property into Chubbuck. The Trusts assert that, following this annexation, the Northgate Partnership "executed their plan to achieve their respective aims." The Trusts contend that Millennial failed to construct the access points and supporting infrastructure promised in the PSA. The Trusts also contend that the Northgate Partnership interfered with the Trusts' ability to access their property from Northgate Parkway, engaged in efforts to steer prospective purchasers away from the Trusts' property, and interfered with prospective purchase agreements and offers to purchase the property.

In November 2019, after construction of Northgate Parkway was complete, Town Center filed an application with the City concerning the road. Northgate Parkway was constructed as a boulevard style road with ten-foot-wide strips on either side. The application sought to dedicate the roadway to the City, but did not address the ten-foot-wide strips on either side. When the Pocatello City Council considered the application in January 2020, Harold Lavelle Rupp, Jr., trustee for the Trusts, appeared at the meeting and indicated that he was "neutral" on the application. The City subsequently approved the application and accepted the dedication of Northgate Parkway. Town Center later conveyed the ten-foot strips on both sides of the road to Millennial and Portneuf Development. The Trusts contend that Millennial and Portneuf's

ownership of the ten-foot strips blocked the Trusts' property from having direct access to Northgate Parkway.

On February 4, 2022, the Trusts filed a complaint against Millennial and one of its members, Arvil Swaney (collectively "Millennial"); Portneuf Development and Portneuf Builders, LLC, and one of their members, Ken Pape (collectively "Portneuf"); and the City. The Trusts alleged claims against all defendants for (1) breach of contract; (2) intentional interference with prospective economic advantage; and (3) fraud. The Trusts later amended their complaint to add the then-mayor of the City, Brian Blad (referred to collectively with the City of Pocatello as "the City Defendants") as a party and to add claims for (1) regulatory taking against the City; (2) declaratory judgment against the City; (3) civil conspiracy against all defendants; and (4) Lanham Act violations against Millennial and Portneuf. Millennial, Portneuf, and the City Defendants are collectively referred to as "Respondents." The claims were based generally on the Trusts' allegations that Millennial did not construct the agreed upon access points and supporting infrastructure and their allegations that "the Northgate Partnership" interfered with the Trusts' ability to access their property from Northgate Parkway and dissuaded potential buyers from purchasing the Trusts' property. The Trusts alleged that they are unable to sell their property to potential buyers because of the lack of access rights from the constructed road, diminishing their property value by $21,210,000. Lastly, the Trusts alleged a civil conspiracy between Respondents to defraud the Trusts by forcing the Trusts to sell their property for below market value.

Between February and April 2022, the Trusts served the original complaint on Respondents along with a set of written interrogatories and requests for production. As discussed in more detail below, Respondents, to varying degrees, failed to fully and adequately respond to these discovery requests. Despite this, for nearly a year after filing the complaint in February 2022, the Trusts did not file any motions to compel or undertake any further discovery.

During this same timeframe, (1) Respondents served written discovery on the Trusts, (2) the City Defendants filed a motion to compel against the Trusts concerning their discovery responses, and (3) the City Defendants took the deposition of Harold Lavelle Rupp, Jr., the trustee of the Trusts. The City Defendants assert the Trusts' counsel refused to make Harold Lavelle Rupp, Jr., available for several months.

On August 29, 2022, the district court issued a Scheduling Order that identified several case deadlines. Trial was scheduled for June 6, 2023. Dispositive motions were to be filed ninety

days before trial, which was March 8, 2023. Discovery was to be completed sixty days before trial, which was April 7, 2023.

On February 22, 2023, the Trusts filed a motion to compel against Millennial, alleging that Millennial had essentially failed to respond to discovery requests that the Trusts had served nearly a year earlier. The Trusts asserted in the declaration supporting their motion that their counsel had several meet and confer phone calls and letters with Millennial's counsel beginning on November 22, 2022, and that Millennial's counsel had represented he would supplement Millennial's discovery responses by February 15, 2023, but that no supplementation had been received.

On March 8, 2023, the dispositive motion deadline, the City, Millennial, and Portneuf each filed a motion for summary judgment. Respondents each noticed their motions for hearing on April 17, 2023. The filing of the motions for summary judgment kicked off a flurry of activity.

On March 15, 2023, the Trusts filed a motion to continue the summary judgment hearing pursuant to Idaho Rule of Civil Procedure 56(d) ("first motion to continue"). The Trusts argued that Respondents had failed to adequately respond or supplement their responses to the Trusts' discovery requests and that the Trusts required additional discovery to respond to the summary judgment motions. Portneuf and the City Defendants opposed the motion.

At a March 20, 2023, hearing, the district court considered both the Trusts' motion to compel against Millennial and the Trusts' Rule 56(d) motion to continue. The district court granted the motion to compel and ordered Millennial to supplement its responses to nearly all of the Trusts' discovery requests within seven days. The district court denied the Trusts' motion to continue, reasoning that there was not good cause to continue the summary judgment hearing. Because the Trusts' motion to continue was denied, their response to the motions for summary judgment were due on April 3, 2023, fourteen days before the April 17 hearing on the motions. *See* I.R.C.P. 56(b). The Trusts did not file a response by the April 3, 2023, deadline.

Instead, on April 4, 2023, the Trusts filed a "Renewed Motion to Continue or Alternatively Alter the Time Period for Response and Reply" ("second motion to continue") pursuant to Rule 56(b)(3). Counsel for the Trusts filed a supporting declaration, in which he asserted that beginning on March 29, 2023, Respondents had supplemented their discovery responses to produce thousands of documents. Counsel also asserted that he was in the process of taking several depositions up to the date of the discovery deadline and that he was seeking more discovery related to the alleged conspiracy between Respondents. The Trusts asserted they needed additional time

5

to complete discovery and requested an extension until April 10, 2023, to submit their response documents. The Trusts noticed the hearing on their second motion to continue for April 17, one week after the date of their requested extension. Portneuf and the City Defendants opposed the motion.

The Trusts subsequently filed their response brief and declarations opposing Respondents' motions for summary judgment on April 12, 2023, two days after the deadline requested in their second motion to continue and nine days after the court-ordered deadline to submit a response to Respondents' motions for summary judgment. The district court had not yet ruled on the second motion to continue.

Respondents filed motions to strike the Trusts' response documents as untimely pursuant to Rule 56(b). Respondents argued that the rules were clear that the Trusts' response was nine days late, that the Trusts had twenty-six days instead of the usual fourteen days to respond to the summary judgment motions, and that the Trusts waited until the last moment to conduct discovery.

The district court held a hearing on April 17, 2023, on the second motion to continue, the motion to strike, and the motions for summary judgment. The district court heard argument from the parties on the motion to continue and the motion to strike and then took the matters under advisement. The parties did not offer argument on the motions for summary judgment and the district court noted at the conclusion of the hearing:

> I think before we can ever get to the issue of summary judgment, I need to answer the questions with regard to what the defendants are asking me to do, and [Trusts' counsel], what you're asking me to do with regard to continuing the summary judgment to allow defendants to file a response in opposition.

On May 24, 2023, the district court issued a written decision and order, which granted Respondents' motions to strike and their motions for summary judgment. The district court struck the Trusts' late response brief and supporting documents because they were untimely. The district court did not specifically rule on the Trusts' second motion to continue but noted that the Trusts' opposition documents failed to meet the Trusts' own filing deadline requested in the second motion to continue. The district court further noted that the Trusts' filings failed to meet the deadline set forth in Rule 56. After striking the Trusts' opposition materials, the district court concluded that Respondents' summary judgment motions were unopposed, granted the motions, and dismissed the Trusts' amended complaint with prejudice.

6

The Trusts filed a motion for reconsideration, arguing that the district court erred in denying both of the Trusts' motions to continue. The district court denied the motion for reconsideration, concluding that the Trusts had failed to demonstrate good cause for their late filings.

Respondents filed motions against the Trusts for attorney fees and costs on several grounds. The Trusts opposed the motions. The district court issued a written decision granting the motions and awarding all Respondents fees pursuant to Idaho Code section 12-121 on the basis that the Trusts' lawsuit was frivolous. The Trusts timely appealed.

## II. ISSUES ON APPEAL

1. Whether the district court erred when it denied the Trusts' first motion to continue.
2. Whether the district court erred when it denied the Trusts' second motion to continue.
3. Whether the district court erred when it granted Respondents' motions for summary judgment.
4. Whether any party is entitled to attorney fees on appeal.

## III. ANALYSIS

### A. The district court did not abuse its discretion when it denied the Trusts' first motion to continue.

The district court denied the Trusts' first motion to continue after finding the Trusts had failed to establish good cause to continue the summary judgment hearing. The Trusts argue that this was error because the Trusts had established that Respondents failed to properly respond to the Trusts' discovery requests, which impaired the Trusts' ability to respond to the motions for summary judgment. At a minimum, the Trusts assert that the district court should have granted the motion with respect to Millennial's summary judgment motion because Millennial did not oppose the Trusts' first motion to continue, and the district court granted the Trusts' motion to compel discovery against Millennial. Respondents assert the district court properly denied the motion because it failed to meet the requirements of Rule 56(d). Further, they assert that they fulfilled their discovery obligations, and the Trusts failed to diligently pursue discovery.

Rule 56(d) allows a nonmoving party to seek additional time to obtain declarations or take discovery when the "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." I.R.C.P. 56(d). Whether to grant the motion lies within the discretion of the district court. *Nipper v. Wootton*, 173 Idaho 404, 409, 542 P.3d 1279, 1284 (2024). When examining whether a trial court properly exercised its discretion, this

Court considers "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

We begin with Respondents' argument that the Trusts' motion failed to satisfy the requirements of Rule 56(d). Our recent decision in *Nipper* discussed what the moving party must demonstrate to obtain relief under Rule 56(d):

> [I]n the context of the need for additional discovery, this Court has made clear that "the party seeking relief has the burden of setting out 'what further discovery would reveal that is essential to justify their opposition,' making clear 'what information is sought and how it would preclude summary judgment.' " The same standard can be applied to the time to obtain responsive affidavits. Accordingly, we hold that a party seeking Rule 56(d) relief for additional time to obtain responsive affidavits has the burden of setting forth what information it seeks to obtain and how it would preclude summary judgment.
>
> The "specified reasons" requirement in Rule 56(d) can be said to include (1) the reasons for the inability to proffer the affidavit within normal summary judgment timeframes and (2) the type of information that would be proffered within the affidavit itself when it became available, explaining how it is essential to the opposition of summary judgment. Given this requirement, we have not interpreted Rule 56(d) as permitting generalized requests for additional time. Instead, we adhere to Rule 56(d)'s requirement for "specified reasons," which a party diligently preparing their case for trial should readily be able to provide. For example, under Rule 56(d) parties are protected from a premature motion for summary judgment by showing that (1) the discovery period has just commenced, (2) what steps have been undertaken to obtain discovery, and (3) detailing what they expected the discovery to show. In this way, Rule 56(d) serves as a tool to protect the diligent, rather than as a lifeline for the unprepared.

173 Idaho at 410, 542 P.3d at 1285 (alteration omitted) (citations omitted). When considering a motion for additional time pursuant to Rule 56(d), the trial court may also consider whether the party seeking relief diligently pursued discovery prior to the filing of summary judgment. *Hastings v. Idaho Dep't of Water Res.*, 173 Idaho 704, 715, 547 P.3d 1190, 1201 (2024).

Here, the Trusts filed a Rule 56(d) motion supported by a declaration of counsel and memorandum in support. The Trusts provided a timeline of the case, argued that they had diligently pursued discovery, but that Respondents had failed to adequately respond to their written discovery, and therefore, the hearing should be continued so they could conduct depositions and additional discovery. The Trusts' counsel stated he had several depositions set before the April 7 discovery deadline, and that additional discovery was needed to respond to the summary judgment

motions. The Trusts contended that the depositions would "disclose the various meetings and communication showing that [Respondents] wrongfully coordinated together to deprive the . . . Trusts of their ability to develop their property" and that additional discovery would uncover "fraud" and was "necessary to show that the . . . Trusts have been damaged by [Respondents'] wrongful conduct."

We hold that the Trusts' motion and supporting documentation failed to satisfy the requirements of Rule 56(d). First, the Trusts did not "provide specific reasons why [they] cannot present essential facts to oppose summary judgment within the allotted timeframes." *Nipper*, 173 Idaho at 410, 542 P.3d at 1285. The supporting declaration and memorandum generally assert that more discovery and depositions will allow them to uncover evidence of the alleged wrongdoings, but the Trusts fail to explain *with specificity* why the discovery done to date and the facts known to them were insufficient to oppose summary judgment. The Trusts' motion to continue was a "generalized request[] for additional time" and a general grievance against Respondents for their alleged lack of discovery response. *Id.* Generalized claims that discovery will uncover fraud, demonstrate damages, and establish a conspiracy are insufficient. The Trusts' motion and supporting documents did not satisfy the "specified reasons" requirement of Rule 56(d).

Moreover, the Trusts failed to establish that they diligently pursued discovery. As we discuss in more detail below, any concerns the Trusts had with Respondents' discovery should have been addressed through the meet and confer process and, if that did not resolve the issues, then through motions to compel. At its heart, the Trusts' motion was based on their contention that Respondents failed to adequately respond to the Trusts' discovery requests. A motion to compel or other discovery tools were the correct avenues for the Trusts to use during litigation if they were concerned that Respondents were withholding discovery. Further, the Trusts do not explain why they waited to schedule any depositions until after the summary judgment deadline. We note again that "Rule 56(d) serves as a tool to protect the diligent, rather than as a lifeline for the unprepared." *Id.*; *see Hastings*, 173 Idaho at 715, 547 P.3d at 1201.

For these reasons, we hold that the district court did not abuse its discretion in denying the Trusts' first motion to continue. While the district court's oral ruling denying the motion is brief, the court recognized that "it's a discretionary decision on the part of the [c]ourt in determining whether or not to grant this motion," noted that "[t]he [c]ourt did issue its order on August 29th of last year, scheduling this case for trial and setting out the deadlines with regard to discovery and

9

dispositive motions," and concluded that, "in consideration of the rules here, I don't find that there is good cause to continue the summary judgment." The district court's statements on the record satisfy the four prongs of the *Lunneborg* test.

Lastly, the Trusts argue that the district court erred in denying their first motion to continue with respect to Millennial because Millennial did not oppose the motion, and the district court granted the motion to compel discovery against Millennial. As previously mentioned, the decision whether to grant or deny a motion to continue is within the sound discretion of the district court. Nothing in Rule 56(d) or this Court's caselaw compels the district court to grant a motion because it is unopposed or because it entered a motion to compel against a party moving for summary judgment. Here, the district court's statements on the record satisfy the abuse of discretion test and we therefore conclude the Trusts have failed to demonstrate the district court erred in denying their first motion to continue.

Our decision today should not be taken as an endorsement of the way discovery unfolded in this case. The record before us reveals that none of the parties in this matter appropriately complied with the discovery obligations set forth in the Idaho Rules of Civil Procedure. We therefore take this opportunity to reiterate the discovery requirements set forth in our Rules of Civil Procedure.

Beginning with Respondents, the record reveals inadequate responses and improper objections to a number of the Trusts' discovery requests. To be sure, some of the Trusts' discovery requests appear to be legitimately objectionable. However, a number of the Trusts' requests were only objectionable in part, meaning that they sought discoverable information but perhaps lacked a relevant timeframe or failed to limit the scope of requested information to the development project that formed the basis for the Trusts' claims. Rather than respond to the non-objectionable portion of these requests, Respondents often asserted boilerplate objections and refused to answer the non-objectionable aspects of the request. In other instances, they stated objections, provided no responsive information, and promised to supplement their responses. One party provided a brief supplemental response that still failed to provide all the information requested by the interrogatory. Another party supplemented its responses over a year later, but only after the Trusts filed their first motion to continue.

Nothing in the Rules of Civil Procedure permits or encourages this kind of stonewalling. The Rules of Civil Procedure require the responding party to respond to interrogatories and

10

requests for production within thirty days after being served. I.R.C.P. 33(b)(2), 34(b)(2)(A). Objections to requests must be stated with specificity. I.R.C.P. 33(b)(4), 34(b)(2)(B). "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." I.R.C.P. 33(b)(3). Similarly, an objection to part of a request for production must specify the part objected to and produce any documents responsive to the rest of the request. I.R.C.P. 34(b)(2)(C). Put differently, if only part of a request is objectionable, the responding party must assert an objection, stated with specificity, to the objectionable part and then provide a proper response to the non-objectionable portion of the request. Our Rules of Civil Procedure consider an evasive or incomplete answer or response equivalent to a failure to respond. I.R.C.P. 37(a)(4). A party who provides evasive or incomplete responses or fails to properly supplement its discovery responses may be (1) compelled by the court to supplement its responses, (2) assessed attorney fees and costs related to the motion, or (3) sanctioned for failing to properly respond to discovery. I.R.C.P. 37(a)(1), 37(a)(3)(A), 37(a)(5), 37(c)(1), 37(d)(3).

With regard to objections, parties should take care to ensure that objections are made in good faith and have a legal basis. *See* I.R.C.P. 26(f)(1). Parties have an obligation to properly answer discovery, even if it is served at the early stages of a case. We are unaware of a rule that protects a party from properly responding to discovery merely because a case is in its early stages. To the contrary, the rules require a party to timely respond and state any proper objections with specificity. If, after a party properly responds to a request, it subsequently acquires additional responsive information, then the party may have an obligation to timely supplement its response. I.R.C.P. 26(e)(1).

Finally, nothing in our Rules of Civil Procedure permits a party to refuse to answer proper discovery requests. In this case, Millennial's initial responses largely consisted of objections, including to those requests seeking information that was obviously discoverable. Millennial made no effort to meet and confer with the Trusts. Instead, it appears to have taken the position that it was the Trusts' obligation to seek a court order requiring its compliance with the civil rules. Nearly a year after Millennial served its inadequate responses, the Trusts finally filed a motion to compel. The district court granted the motion after finding many of Millennial's objections without merit.

Our Rules of Civil Procedure provide remedies for parties who believe discovery requests are improper for one reason or another. A party may file a motion with the court to limit the extent of discovery permitted by the rules if, among other reasons, "the burden or expense of the proposed

11

discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." I.R.C.P. 26(b)(1)(C)(iii). A party may also seek a protective order from the court forbidding or limiting discovery to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense." I.R.C.P. 26(c)(1). Our rules provide additional grounds on which a party may seek a court order limiting or quashing discovery. The point here is that nothing permits one party to stonewall the requesting party and force it to file a motion to enforce compliance. Rather, as we discuss below, discovery is a cooperative endeavor. Our rules include a meet and confer requirement precisely to discourage the situation that occurred in this case.

Turning to the Trusts, they failed to properly utilize the tools provided in our Rules of Civil Procedure to compel Respondents' compliance with their discovery obligations. For example, the Trusts' counsel waited over six months after serving discovery on Millennial to email Millennial's counsel about its inadequate discovery responses. Millennial responded promptly but provided little to no additional information and largely reaffirmed its original objections. Counsel for the Trusts then waited another two and a half months to contact Millennial's counsel to schedule a meet and confer regarding the inadequate responses. It took several more weeks for the Trusts' counsel to file a motion to compel against Millennial, which the district court largely granted. Rule 37 provided the Trusts with the tools to enforce compliance, but they failed to employ them. Moreover, the Trusts failed to take any action prior to the summary judgment deadline to address the City's and Portneuf's discovery responses. Nothing in the rules permits the Trusts to sit idly by for nearly a year and then seek to continue longstanding deadlines because of discovery issues that they failed to timely address. Moreover, nothing in the Rules of Civil Procedure entitles the Trusts to seek an extension to longstanding court deadlines because they waited until the eleventh hour to conduct further discovery.

Much of what occurred in this case could have been avoided had the parties promptly contacted each other to discuss the discovery requests and the related responses. Our Rules of Civil Procedure contemplate that parties, even in a hotly contested case, will work together to resolve discovery disputes. If a party fails to respond to discovery, the requesting party may move for an order compelling disclosure or discovery. I.R.C.P. 37(a)(1). The Rules of Civil Procedure require a responding party to seek a protective order to limit or quash discovery requests, rather than

lodging boilerplate objections and then doing nothing further. I.R.C.P 26. This is not to say that all parties involved in a discovery dispute should immediately run to the courthouse to file a motion. Rather, the rules encourage collaboration to negotiate a resolution to disputes. For example, prior to filing a motion to compel, the requesting party must include a certification that he has in good faith conferred, or attempted to confer, with the party failing to properly respond. I.R.C.P. 37(a)(1).

The discovery process, like any successful endeavor involving two or more parties, requires communication, reasonableness, and the willingness to compromise. It took far too long for the parties to undertake those actions in this case. When parties fail to work together to resolve discovery disputes, they run the risk that motions to continue will either be granted or denied, that evidence or witnesses could be excluded, or that other sanctions could be imposed, including the dismissal of claims or defenses. The decision how to handle discovery disputes is a matter of discretion for the district court. While we conclude that, in this instance, the district court did not err in *denying* the Trusts' first motion to continue, we may have reached the same conclusion if we were reviewing an order *granting* the Trusts' motion to continue.

## B. The district court did not err when it denied the Trusts' second motion to continue.

The district court's analysis supporting its decision granting Respondents' motion to strike also constituted its reasoning for denying the Trusts' second motion to continue. The district court noted that the Trusts had failed to file their response brief within the deadline they suggested in their second motion to continue. Moreover, it found that, after the court denied their first motion to continue, they had "more than sufficient time" to submit a response within the Rule 56 timeframe. The district court then granted the motion to strike the Trusts' response brief and supporting documents, which also denied the Trusts' second motion to continue.

The Trusts argue that the district court erred in denying their second motion to continue because it was supported by numerous "new and unforeseeable facts" that established good cause for why they could not file a timely response. We conclude that the district court did not err in denying the motion.

The Trusts filed their second motion to continue pursuant to Rule 56(b)(3), which permits the court to alter the summary judgment deadlines and continue a summary judgment hearing upon a showing of good cause. I.R.C.P. 56(b)(3). "[T]his Court reviews the denial of a motion to continue for an abuse of discretion." *Hastings v. Idaho Dep't of Water Res.*, 173 Idaho 704, 715,

547 P.3d 1190, 1201 (2024). Rule 56(b)(3) is like Rule 56(d) in that it gives the district court discretion to extend timelines or continue hearings. *See* I.R.C.P. 56(d). However, the language of Rule 56(b)(3) is broader than 56(d) because it has no "specified reasons" requirement. *Id.* Instead, Rule 56(b)(3) only requires a showing of good cause. I.R.C.P. 56(b)(3).

The Trusts fail to demonstrate any error by the district court in denying their second motion to continue. The Trusts' second motion largely reiterated the same arguments in their first motion to continue—that Respondents had recently disclosed thousands of documents, that the Trusts were still taking depositions, and that the recent discovery was yielding evidence that confirmed the Trusts' theory of the case. We conclude that the Trusts' second motion to continue suffered from the same flaw as their first motion to continue. The Trusts gave no reason why they were unable to use the information already in their possession to file a timely response to the motions for summary judgment. While the Trusts may have wished to marshal additional evidence from the recently disclosed documents and pending depositions, the Trusts were only in that position because they failed to diligently pursue discovery for a year prior to the summary judgment deadline. The district court thus concluded that the Trusts failed to demonstrate good cause to grant the motion. The district court's written decision denying the motion satisfies the four prongs of the *Lunneborg* test and therefore we affirm the district court's decision.

The Trusts argue that we should reverse the district court's decision because it failed to provide any reasoning for why it denied the Trusts' second motion to continue and incorrectly relied on *Ciccarello v. Davies*, 166 Idaho 153, 456 P.3d 519 (2019), instead of the factors laid out in *Gordon v. U.S. Bank National Association*, 166 Idaho 105, 455 P.3d 374 (2019). We disagree. Although the district court's decision simultaneously addresses both the Trusts' second motion to continue and Respondents' motion to strike, its analysis applied to both motions. Its decision expressly recognized that the Trusts were again requesting a continuance of the summary judgment hearing, and its analysis addressed why, in its discretion, it was declining to grant the motion. The district court's decision explains that the Trusts failed to demonstrate good cause to continue the hearing and the briefing deadlines because the Trusts had more time than that permitted by Rule 56 but still failed to meet the filing deadline and failed to explain why they could not meet the original filing deadline.

Nor did the district court err by citing *Ciccarello* instead of *Gordon*. The factors discussed in *Gordon* were relevant to whether a district court errs when it finds good cause under Rule

56(b)(3) to grant a *motion to shorten time*. 166 Idaho at 113, 455 P.3d at 382. This Court has never held that a district court must consider these factors for purposes of a *motion to continue* pursuant to Rule 56(b)(3).

The district court cited *Ciccarello* repeatedly for the proposition that trial courts have discretion whether to accept late documents to ensure that a party is not incentivized to bypass timing requirements or game the system after failing to diligently litigate the case. While the Trusts are correct that *Ciccarello* concerned a motion for reconsideration of a motion for summary judgment instead of Rule 56(b)(3) motion to continue, the Trusts fail to explain why the general rule of law from *Ciccarello*—that a district court has discretion to assure that a party is not exploiting the rules to game the summary judgment deadlines—should not apply here. We conclude the district court did not err in applying the general principles from *Ciccarello* to this case.

## C. The district court erred in granting Respondents' motions for summary judgment and dismissing the Trusts' complaint with prejudice.

After striking the Trusts' late response brief and supporting documents, the district court concluded that the Trusts failed to submit any reliable evidentiary material that would establish a genuine issue of material fact and granted summary judgment in favor of Respondents. The Trusts argue that the district court erred because it granted Respondents' motions for summary judgment as a sanction for the Trusts' untimely response. They assert this is established by the district court's written decision, which heavily focused on the Trusts' failure to diligently pursue discovery and contained only a cursory discussion of Respondents' summary judgment motions.

"The standard of review on appeal from an order granting summary judgment is the same standard that is used by the district court in ruling on the summary judgment motion." *Hickman v. Boomers, LLC*, 174 Idaho 1048, ___, 554 P.3d 99, 105 (2024) (quoting *Berglund v. Dix*, 170 Idaho 378, 384, 511 P.3d 260, 266 (2022)). The trial court "must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "All disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party." *Smith v. Excel Fabrication, LLC*, 172 Idaho 725, 728, 535 P.3d 1098, 1101 (2023) (quoting *Manning v. Micron Tech., Inc.*, 170 Idaho 8, 12, 506 P.3d 244, 248 (2022)). Even if a motion is unopposed, the trial court is still required to review the moving party's

motion and evidence to determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *See* I.R.C.P. 56(a), (e).

The Trusts are correct that the district court's analysis of Respondents' summary judgment motions was minimal. The district court's written decision totaled eleven pages. The district court spent approximately one page analyzing Respondents' summary judgment motions. The crux of its decision was that because the motions were unopposed, Respondents were entitled to summary judgment:

> Because this [c]ourt declined to consider the answering brief and opposing materials as untimely, *the [Trusts] have not submitted any reliable evidentiary material that would meet the requirements of Rule 56*. Thus, due to the lack of any affidavits or other evidentiary material that is properly before this [c]ourt for consideration, the [*Trusts*] *have failed to meet their burden*, and summary judgment in favor of [Respondents] is warranted.

(Emphasis added.)

We conclude that the district court erred in granting summary judgment for two reasons. The first error was the failure to analyze Respondents' motions under Rule 56. Summary judgment is only proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). The moving party always has the initial burden to show they are "entitled to judgment as a matter of law." *Id.* This is true even when a summary judgment motion is unopposed. *See* I.R.C.P. 56(a), (e). The district court failed to analyze Respondents' submissions and determine, for each claim, whether there was no genuine dispute of material fact and whether Respondents were entitled to judgment as a matter of law.

Second, the district court's failure to analyze Respondents' motions, combined with the circumstances leading up to the written order granting summary judgment, calls into question whether the court entered summary judgment as a sanction for the Trusts' untimely summary judgment response. The district court never held a hearing on the merits of the motion for summary judgment. Instead, at the scheduled hearing on the motions, the district court did not allow argument on the motions for summary judgment because it believed further proceedings on the summary judgment motions were contingent on its decision regarding the second motion to continue and the motions to strike. The district court then took the issue of whether to grant the motion to continue and the motion to strike under advisement.

This Court has held that, even if a party fails to submit a response brief, a party is still entitled to argue against a motion for summary judgment. *Gem State Ins. Co. v. Hutchison*, 145

16

Idaho 10, 14, 175 P.3d 172, 176 (2007). The district court's comments during the motion hearing strongly suggest it may have intended to postpone hearing argument on the summary judgment motions until after it decided the second motion to continue and the motions to strike. The fact that the district court did not permit the Trusts with an opportunity to argue in opposition to the summary judgment motions raises a question whether the district court granted summary judgment as a sanction against the Trusts.

If the district court granted Respondents' motions for summary judgment and dismissed the case as a sanction for the Trusts' untimely response brief, that is improper and would be a basis to reverse its decision. While the district court has the discretion to impose a sanction dismissing a cause of action, *Lee v. Nickerson*, 146 Idaho 5, 9, 189 P.3d 467, 471 (2008), the district court can do so only if it first "balance[s] the equities between the disobedient party and the innocent party, and . . . consider[s] whether lesser sanctions would be effective," *Petersen v. Millennial Dev. Partners, LLC*, ___ Idaho ___, ___, 567 P.3d 780, 786 (2025) (citing *Erickson v. Erickson*, 171 Idaho 352, 362, 521 P.3d 1089, 1099 (2022)). When imposing the ultimate sanction of dismissing with prejudice, the district court must consider certain factors and the record must show the district court considered these factors. *Kantor v. Kantor*, 160 Idaho 810, 822, 379 P.3d 1080, 1092 (2016). There is no indication in the district court's decision that it considered these factors. Accordingly, if the district court dismissed the Trusts' case as a sanction, it erred in doing so.

For these reasons, we reverse the district court's grant of summary judgment, vacate its judgment dismissing the amended complaint, and remand this case for further proceedings consistent with this opinion. Because we are remanding this matter for further proceedings, we do not address the Trusts' arguments regarding their motion to reconsider. Additionally, we reverse the district court's award of attorney fees to Respondents.

## D. No party is entitled to attorney fees on appeal.

All parties have requested attorney fees on appeal under Idaho Code section 12-121. Millennial and Portneuf also seek attorney fees pursuant section 12-120(3). The City Defendants also argue they are entitled to attorney fees on appeal pursuant to section 12-117. These three statutes provide for an award of attorney fees to the prevailing party under different circumstances. *See* I.C. §§ 12-121, 12-120(3), 12-117. Because each party prevailed in part, there is no "prevailing party" on appeal. We therefore decline to award attorney fees to any party.

## IV.    CONCLUSION

For the reasons discussed herein, we affirm the district court's denial of the Trusts' motions to continue but we reverse the district court's grant of summary judgment. Because all parties prevailed in part, we decline to award costs on appeal pursuant to Idaho Appellate Rule 40.

Chief Justice BEVAN, and Justices BRODY, MOELLER, and MEYER CONCUR.